# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74107-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JAVIER ALEJANDRO MACIAS-CAMPOS, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: <u>April 17, 2017</u> |
| | ) | |

Cox, J. — Javier Macias-Campos appeals his judgment and sentence. We hold that the trial court did not abuse its discretion in admitting testimony concerning Macias-Campos's previous acts of domestic violence. Such testimony was relevant to essential elements of the charged crimes and was not unduly prejudicial. Accordingly, we affirm.

In 2014, Macias-Campos and M.O. became friends and lived together temporarily, along with Macias-Campos's girlfriend R. Eventually M.O. decided to leave.

Later that year, Macias-Campos and M.O. reconciled and returned to living together. They also became intimate. But Macias-Campos began to abuse M.O. He became controlling and jealous. When M.O. attempted to reach out to a friend, Macias-Campos responded by hitting her and then having sex with her against her wishes. M.O. escaped for a time and then returned. Around this time, Macias-Campos told M.O. about how he had restrained R. during their

relationship. He explained how he had violently hit her in the head with a gun and tied her up in the trunk of his car while he drove around.

In early 2015, Macias-Campos and M.O. booked a room at the Hillside Motel on Aurora Avenue. M.O. managed to send a Facebook message to her mother explaining that she felt she could not leave and that she was scared.

But Macias-Campos became enraged when he found out that M.O. was communicating with her mother and a friend. He told her she could not leave the motel room. She retreated to the bathroom but he followed, accusing her of cheating with a former boyfriend. He began hitting her. He threatened her with a screwdriver and a knife. He said he would "do what the cartel does with girlfriends who cheat." And he tied her hands behind her back with a twisted coat hanger.

Eventually he relented and M.O. furtively contacted her mother to alert the motel staff. Police were notified and, responding, arrested Macias-Campos. The State charged Macias-Campos with felony harassment and unlawful imprisonment, amongst other crimes, each with a domestic violence aggravator.

Pretrial, Macias-Campos moved to exclude evidence of his prior misconduct under ER 404(b). It later appeared that such evidence concerned M.O.'s testimony about what Macias-Campos had told her of how he treated R. The trial court declined to exclude such evidence but later provided a limiting instruction. It explained that it admitted the challenged testimony for the limited purpose of showing that M.O. could reasonably fear that Macias-Campos would

act on his threats and that he could intimidate M.O. into remaining constrained in the bathroom against her will.

The jury found Macias-Campos guilty of fourth degree assault, felony harassment, unlawful imprisonment, and witness tampering. The jury also found these crimes occurred in a domestic relationship. The trial court entered its judgment and sentence in accordance with the jury's verdict.

Macias-Campos appeals.

## PRIOR ACTS EVIDENCE

Macias-Campos argues that the trial court abused its discretion in admitting evidence under ER 404(b) of his alleged past acts of domestic violence against R. We disagree.

ER 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Thus, the rule bars admission of certain evidence when used to prove character but not when used to prove a proper purpose. In order to determine whether evidence is admissible in a particular instance, the trial court conducts a four part test.

It must:

> (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to

prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.[1]

The proponent of the evidence has the burden to prove the first three elements.[2] We review for an abuse of discretion the trial court's decision to admit or exclude evidence under such a rule.[3] The appellant bears the burden of proving an abuse of discretion.[4]

Regarding the first element, Macias-Campos does not contest whether his misconduct towards R. occurred or whether M.O. believed it had. Thus, this element is undisputed.

But regarding the second element, the parties dispute the purpose for which the evidence was proffered. Macias-Campos argues that the trial court "likely" admitted the contested evidence in order to allow the impeachment of M.O. But the State argues that the evidence was admitted because it went to elements of the charged crimes. Specifically, the State contends that it was necessary to show M.O. reasonably feared Macias-Campos in order to prove she was restrained, and that it was necessary to prove an element of the felony harassment charge.

Here, the court explained its reasoning for admitting the challenged testimony and gave a limiting instruction consistent with this purpose. Specifically, it explained that the jury could consider the testimony for "the limited

---

[1] State v. Gresham, 173 Wn.2d 405, 421, 269 P.3d 207 (2012).

[2] State v. Ashley, 186 Wn.2d 32, 39, 375 P.3d 673 (2016).

[3] Id. at 38-39.

[4] Id. at 39.

assessment of whether or not [M.O.'s] purported fear of the defendant was reasonable and whether or not she felt free to leave, with regard to the unlawful imprisonment, but not for any other purpose." After M.O. testified, the trial court provided a limiting instruction. It explained:

> Alleged past behavior by Mr. Macias-Campos toward this witness is admissible only for two purposes: Purpose number one is to assess whether or not there was a reasonable basis for this witness to be in reasonable fear with regard to any alleged threats that were made to her on the date charged, and the other purpose for which you can consider this testimony is whether or not the alleged restraint of her on the date alleged was accomplished by intimidation in some way. All right? Not for any other purpose.[5]

Jury Instruction 7 is substantively identical to this oral instruction.

Thus, the record indicates that the court admitted the challenged testimony to show whether there was a reasonable basis for M.O.'s fear of Macias-Campos's threat, and whether Macias-Campos restrained her by intimidation. Contrary to Macias-Campos's argument, it was not admitted to impeach or bolster M.O.'s credibility.

The third element requires the trial court to determine whether the evidence is relevant to prove an element of the crime charged. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[6]

---

[5] Report of Proceedings (August 6, 2015) at 71.

[6] ER 401.

Evidence of past domestic violence is probative of a victim's state of mind.[7] The supreme court has specifically found evidence of a defendant's past bad acts against a victim relevant "highly probative" to show restraint by intimidation.[8] And this court has held admissible evidence of past acts directed against a third party if "necessary to put the threats [against the victim] in context."[9]

Here, Macias-Campos does not appear to contest the relevance of this evidence. And the elements of the charged crimes demonstrates the relevance of the testimony.

To prove unlawful imprisonment, the State must show that the defendant "knowingly restrain[ed] another person."[10] RCW 9A.40.010(6) defines restraint as the restriction of "a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty. Restraint is 'without consent' if it is accomplished by (a) physical force, intimidation, or deception . . . ."

The felony harassment statute requires the State to prove the defendant threatened the victim and, in so doing, "place[d] the person threatened in reasonable fear that the threat will be carried out."[11]

---

[7] State v. Fisher, 165 Wn.2d 727, 744-45, 202 P.3d 937 (2009).

[8] Ashley, 186 Wn.2d at 48.

[9] State v. Ragin, 94 Wn. App. 407, 412, 972 P.2d 519 (1999).

[10] RCW 9A.40.040(1).

[11] RCW 9A.46.020(b).

Here, the testimony was probative of the elements in these charging statutes. As discussed above, the trial court admitted the testimony to show that any restraint was nonconsensual because Macias-Campos accomplished it by intimidating M.O. The testimony was also admitted to show the reasonableness of M.O.'s fear in regard to the threats Macias-Campos made. As such, the testimony was relevant to proof of both of these crimes.

The fourth element requires that the trial court weigh the probative value against the prejudicial effect. Macias-Campos argues that the trial court abused its discretion in admitting the challenged testimony because its prejudicial effect outweighed its probative value. Not so.

We remain mindful that "'courts must be careful and methodical in weighing the probative value against the prejudicial effect of prior acts in domestic violence cases because the risk of unfair prejudice is very high.'"[12] These acute concerns require the State to prove the "overriding probative value" of the challenged evidence.[13]

State v. Ashley[14] is instructive. Baron Ashley and Makayla Gamble had dated for several years.[15] During this time, Ashley had violently abused

_____

[12] State v. Gunderson, 181 Wn.2d 916, 925, 337 P.3d 1090 (2014).

[13] Id.

[14] 186 Wn.2d 32, 375 P.3d 673 (2016).

[15] Id. at 35.

7

Gamble.[16] Eventually the two separated and, for several years following, they saw each other sporadically.[17]

Sometime later, police went to arrest Ashley and his sister for robbery and motor vehicle theft.[18] When they did so, Ashley, his sister, and Gamble were at the sister's home.[19] The police left, returning a few days later.[20] They knocked on the door but no one answered.[21] After obtaining a key, police entered the house.[22] They met Gamble in the living room.[23]

They asked her if Ashley was inside and she told them he was upstairs.[24] After arresting him, police asked Gamble why she had "helped Ashley hide."[25] She explained that Ashley had detained her in the bathroom and only allowed her to leave once police entered the home.[26]

---

[16] Id. at 40.

[17] Id. at 35.

[18] Id.

[19] Id.

[20] Id.

[21] Id.

[22] Id.

[23] Id.

[24] Id.

[25] Id.

[26] Id.

The State charged Ashley with unlawful imprisonment with domestic violence.[27] It moved pretrial to introduce evidence of Ashley's earlier domestic violence against Gamble in order to show that Ashley had intimidated Gamble into remaining constrained to the bathroom.[28] The trial court granted that motion.[29]

On review, the supreme court affirmed the admission, explaining that it was reasonable to conclude "that Gamble, whom Ashley allegedly abused numerous times over an eight-year period, could continue to fear or be intimidated into obeying Ashley years after the most recent incident."[30] As such, the trial court had properly found that the State proved the "overriding probative value of this evidence because the evidence went directly to a necessary element of the crime."[31] The evidence was vital to help the jury assess whether Ashley restrained Gamble by intimidation.[32] It showed that Gamble's response "was not inexplicable, not unreasonable, and that she was [held] without consent."[33]

---

[27] Id.

[28] Id.

[29] Id.

[30] Id. at 45.

[31] Id.

[32] Id.

[33] Id. at 46-47.

Here, the State had to prove, for the felony harassment charge, that M.O. could reasonably fear that Macias-Campos would carry out his threats. And it had to prove, for the unlawful imprisonment charge, that M.O. did not consent to her restraint, perhaps out of intimidation. For both, it had to show the reasonable basis for M.O.'s fear.

Thus, it offered evidence that M.O. knew Macias-Campos had committed previous acts of domestic violence against R. This evidence "went directly to a necessary element of the crime[s]."[34] It explained M.O.'s actions and put them in appropriate context. As in Ashley, such evidence had the "'overriding probative value'" to support its admission, even in the sensitive context of a domestic violence trial.[35] Thus, the trial court did not abuse its discretion in admitting the challenged testimony.

But Macias-Campos argues that the supreme court's decision in State v. Gunderson[36] bars admission. This argument is unpersuasive.

In that case, the State brought a domestic violence charge against Daniel Gunderson.[37] At trial, one of the alleged victims, Christina Moore, testified that no such incident took place.[38] The State, in response, offered evidence of Gunderson's two prior acts of domestic violence against Moore in order to

---

[34] Id. at 45.

[35] Id. at 48.

[36] 181 Wn.2d 916, 925, 337 P.3d 1090 (2014).

[37] Id. at 918.

[38] Id. at 920.

impeach her testimony.[39] The court concluded that the evidence was sufficiently relevant to Moore's credibility and admitted it.[40]

The supreme court reversed, holding that prior act evidence was not admissible to impeach a victim's credibility when the victim had "neither recant[ed] nor contradict[ed] prior statements."[41] Admitting such evidence outside those circumstances was an abuse of discretion.[42]

Here, Gunderson is not on point. As discussed above, the State offered, and the trial court admitted, the challenged testimony to show necessary and essential elements of the charged crimes. It was not admitted to bolster or impeach credibility. Thus, Gunderson and Macias-Campos's argument that M.O. had not recanted her testimony are irrelevant to this determination. Ashley and similar cited cases control.

We affirm the judgment and sentence.

Cox, J.

WE CONCUR:

Leach, J.

Becker, J.

---

[39] Id. at 920-21.

[40] Id. at 921.

[41] Id. at 925.

[42] Id.