IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78858-2-I |
| | ) | |
| Respondent | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JOSE POMPILIO IRIAS SANCHEZ, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |
| . | ) | FILED: March 9, 2020 |
| | ) | |

HAZELRIGG, J. — Jose P. Irias Sanchez (Irias)[1] was convicted of assault in the second degree-domestic violence and felony harassment-domestic violence after a jury trial. In pretrial motions, the defense sought to exclude prior allegations of domestic violence. The trial court specifically excluded some acts while allowing testimony as to others. At trial, the key witness twice violated these pretrial rulings. In the first instance the court provided a curative instruction. In the second instance, the testimony was not interpreted from Spanish to English for the jury. Irias argues the admission of the prior bad act evidence was improper and that he was deprived of a fair trial due to the violations of the pretrial rulings by the witness.

---

[1] The defendant's last name is listed both with and without a hyphen in various documents contained in the record. In the majority of the letters of support submitted for his sentencing, friends and business associates refer to the defendant as Jose Irias. Further, he appears to sign documents in the record with only Irias. As this is a common naming convention in Latinx and Spanish-language dominant communities, and it appears to be how the defendant self-identifies, we will utilize that practice herein.

When viewed in light of the evidence as a whole, Irias fails to demonstrate that the statements were so prejudicial as to deprive him of a fair trial. We affirm.

## FACTS

Jose Irias Sanchez was charged with assault in the second degree-domestic violence and felony harassment-domestic violence. The charges arose out of an incident in October 2017 when police responded to a 911 call by Liliana Salazar Hernandez (Salazar). When police arrived, they found Salazar with her two young daughters in a van a short distance away from the home they shared with Irias. Salazar reported that her children's father, Irias, had attacked her with a machete. Salazar does not speak English and could not communicate directly with responding officers, so her children and a neighbor assisted as interpreters with the police.

Salazar reported that she put her children to bed earlier that evening and then she went to bed at approximately 9:30pm. Irias had been outside drinking and came upstairs at approximately 1:00am. Salazar observed Irias go into their daughters' room and then come in to their bedroom. Irias began to argue with Salazar and then left to bathe. Salazar testified that Irias came out of the bathroom with a machete, pushed Salazar's face against a pillow and held the machete to her neck, stating he wanted to "finish everything." Salazar was ultimately able to get away, gather her daughters and drive a few blocks away to call the police.

Irias was taken into custody and charged with assault in the second degree and felony harassment both with special allegations of domestic violence. Prior to trial, the State sought to admit alleged prior bad acts involving domestic violence

- 2 -

within Irias and Salazar's relationship. None of the prior acts had been reported to law enforcement previously and the evidence solely consisted of Salazar's statements. The defense moved to exclude such testimony, arguing that the State could not prove them by a preponderance of the evidence. Defense counsel further argued that allowing uncorroborated claims of past domestic violence would be highly prejudicial and would be used for improper inferences as to Irias' propensity toward violence.

The trial court excluded allegations of past sexual violence and violence against the children. However, the court did permit other broader allegations of ongoing domestic violence to show the "reasonable fear aspects of both charges." The court reminded the prosecutor in the case to discuss these limitations with Salazar. At trial, however, Salazar did testify to past violence by Irias against the children and sexual violence against her. The court issued a curative instruction after the testimony about conduct toward the children. The judge was able to intervene during the testimony regarding sexual violence, preventing the testimony from being interpreted from Spanish to English for the jury.

The jury convicted Irias as charged and the court vacated the felony harassment charge based on merger. Irias now appeals, arguing the court improperly admitted evidence of prior bad acts and that the improper testimony by Salazar deprived him of his right to a fair trial.

ANALYSIS

I.    Admission of 404(b) Evidence of Prior Bad Acts

We review a trial court's decision to admit or exclude evidence for abuse of discretion. State v. Foxhoven, 161 Wn.2d 168, 174, 163 P.3d 786 (2007). However, "[w]e review the trial court's interpretation of ER 404(b) de novo." State v. Fisher, 165 Wn.2d 727, 745, 202 P.3d 937 (2009). "Discretion is abused if it is exercised on untenable grounds or for untenable reasons." State v. Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). "Failure to adhere to the requirements of an evidentiary rule can be considered an abuse of discretion." Foxhaven, 161 Wn.2d at 174. The appellant bears the burden of proving an abuse of discretion occurred. State v. Ashley, 186 Wn.2d 32, 39, 375 P.3d 673 (2016).

"Generally, evidence of a defendant's prior misconduct is inadmissible to demonstrate the accused's propensity to commit the crime charged." Fisher, 165 Wn.2d at 744. However, ER 404(b) allows prior misconduct to be admitted for other purposes, such as proof of a victim's state of mind. Id.

> To admit evidence of other crimes or wrongs under Washington law, the trial court must (1) identify the purpose for which the evidence is sought to be introduced, (2) determine whether the evidence is relevant to prove an element of the crime charged and (3) weigh the probative value of the evidence against its prejudicial effect. Additionally, the party offering the evidence of prior misconduct has the burden of proving by a preponderance of the evidence that the misconduct actually occurred.

State v. Lough, 125 Wn.2d 847, 853, 889 P.2d 487 (1995) (internal citations omitted). The party seeking to introduce the evidence has the burden of establishing the three steps and that the misconduct actually occurred. Ashley, 186

Wn.2d at 39. The court must conduct this inquiry on the record and provide a limiting instruction if the court admits the evidence. Id.

Here, the State brought a pretrial motion to admit certain ER 404(b) evidence and Irias opposed. The court heard argument on this and other matters while addressing motions in limine of the parties prior to seating a jury. Irias argues that the trial court erred in admitting the prior bad act evidence of previous domestic violence because the state failed to prove that the prior incidents had occurred, the evidence was not relevant to an element of assault, and the risk of prejudice from the evidence substantially outweighed its potential probative value.

Irias argues that the court was only provided with statements by the victim without any corroborating evidence and that this was insufficient to support the court's finding that the prior acts did occur. However, the defense cites no authority to support their claim that the court's finding in this regard was improper absent such corroboration. We review the court's determination as to whether the prior misconduct was proven by a preponderance of the evidence for abuse of discretion. Id. at 40.

Both parties cite to Ashley, in which a court admitted evidence of the defendant's prior domestic violence against the victim under ER 404(b). Id. at 40. The court was provided with the victim's testimony describing instances of domestic violence by Ashley between 2000 and 2008, along with a police report from 2004. Id. at 40-41. Ashley did not present any evidence to refute the allegations and the court ultimately determined the state had proven the prior abuse had occurred by a preponderance of the evidence. Id.

Here, the trial court was provided with Salazar's statements to police in the course of the investigation of the present case in which she mentioned the prior incidents, her petition for a protection order which discussed previous abuse, the audio of the protection order hearing that included testimony from Salazar about prior violence, and the audio of the prosecutor's interview with her for purposes of preparing the instant case. Additionally, the record contains a pretrial exhibit wherein Irias verbally acknowledges that violence existed in the relationship.

On review, we must determine whether the trial court's findings are supported by evidence that was submitted in the record; specifically that the State demonstrated by a preponderance of the evidence that prior acts of domestic violence occurred. Here, that standard is met with the evidence described above. This is further bolstered by the fact that Irias provided statements indicating some abuse had occurred and provided no evidence refuting the victim's claims of prior abuse.

Next, we address Irias's argument that the prior misconduct was not relevant to the charged crimes. "Evidence is relevant if it has a tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." State v. Magers, 164 Wn.2d 174, 184, 189 P.3d 126 (2008). The two charges in this case were assault in the second degree and felony harassment. The relevant subsection under which Irias was charged with assault states "[a] person commits the crime of assault in the second degree when he or she assaults another with a deadly weapon." The jury instruction defining assault in this case stated:

[a]n assault is an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

The jury instruction for the felony harassment charge was as follows:

[a] person commits the crime of harassment when he or she, without lawful authority, knowingly threatens to cause bodily injury immediately or in the future to another person and when he or she by words or conduct places the person threatened in reasonable fear that the threat will be carried out and the threat to cause bodily harm consists of a threat to kill the threatened person or another person.

Here, the trial court allowed testimony regarding prior domestic violence by Irias against Salazar "to show the reasonable fear aspect of both charges." Prior acts of domestic violence would have some relevance to both counts submitted to the jury.

The defense cites to Magers for the proposition that it is improper for a court to admit alleged prior violence to support the reasonable fear of an alleged victim, but that opinion is a plurality and the facts are distinguishable. See 164 Wn.2d 174. Magers involved a recanting victim along with an admission of a separate prior bad act which did not involve the victim. Id. at 178-79. Here, Salazar did not recant and all of the prior bad acts at issue directly involved her. The trial court did not abuse its discretion in determining that the prior acts of domestic violence were relevant to both charges as they tend to increase the probability that Salazar was reasonably fearful as to both counts.

Irias also asserts that the trial court abused its discretion in reaching its determination as to which prior acts were substantially more prejudicial than probative. The trial court in this case was very specific as to what it determined

would be admissible and inadmissible on this prong of the ER 404(b) analysis. The trial court weighed the evidence and determined that any references to abusing the children would not be allowed in, nor would anything about sexual violence or coercion. The court determined that it would allow testimony as to domestic violence by Irias against Salazar generally, an assault incident by Irias that caused Salazar to miscarry, and Salazar's claim that Irias would assault her if she did not do what he wanted.

Irias argues that the evidence was not particularly probative since anyone would be fearful if a machete was brandished at them. However, when this argument was considered during the ER 404(b) argument, the court noted that the evidence of the history of physical violence and physical threats "is sufficiently probative of reasonable fear" and was allowed in. This was despite the reasonable conclusion that the specific act with the machete underlying the assault in the second degree charge would result in fear for most people. The trial court did not abuse its discretion in the analysis and ruling to admit the specific prior bad acts.

Irias argues that Ashley is instructive here, but it does not advance his position. 186 Wn.2d 32. In Ashley, the court admitted the victim's testimony regarding prior domestic violence. Id. at 38. The court admitted it for two purposes; to assess the victim's credibility and to determine the element of consent as to the unlawful imprisonment charge. Id. The Supreme Court rejected the claim that the evidence was properly allowed in for credibility purposes, but did find it proper to prove the element regarding consent. Id. at 43-44. The court held that, "[i]t is unquestionably reasonable for the trial court to conclude that a domestic violence

victim would continue to fear her tormentor, even years after the last incident of abuse." Id. at 45.

The court in Ashley expressly found that the prior abuse was relevant to an element of the criminal allegation before the court. Id. The court went on to explain that despite the defense's general theory that the victim had "made up her story to avoid getting in trouble, there was no evidence in the record to suggest that [the victim's] testimony was untruthful." Id. at 47. This led to the court's determination that there was no need to introduce the domestic violence evidence to defend or bolster the victim's credibility. Id. Since the evidence was properly admitted to prove an element of the crime, its admission for credibility purposes as well was determined to be harmless error.

Ashley is not helpful for Irias. In his case, Salazar's credibility was the main focus for the defense. Their main defense theory was that Salazar had fabricated the incident in order to obtain immigration benefits. Though the court here did not admit the prior bad acts expressly for purposes of credibility analysis, given the theory of the case and the need for the State to prove the reasonable fear by Salazar, the court's determination that past violence, excluding the more inflammatory allegations such as sexual violence and abuse of children, does not constitute an abuse of discretion. Though the defense claims that anyone would be fearful of a machete and the bad act evidence was therefore unnecessary, this argument is not persuasive.

In Magers, our Supreme Court explained that when a defendant enters a not guilty plea, it puts the burden on the State to prove every element of the crime

beyond a reasonable doubt. 164 Wn.2d at 183. The court there concluded it was proper to admit the defendant's prior bad acts to prove the victim's reasonable fear of bodily injury. Id. The same is true here. The trial court engaged in the proper analysis on the record and considered arguments of counsel before admitting certain prior bad act evidence and excluding others. We find no abuse of discretion as to the ruling on admissibility of ER 404(b) evidence.

II.      Statements by Witness in Violation of Pre-Trial Evidence Rulings

Irias argues he was deprived of a fair trial due to a violation of the court's pretrial rulings excluding certain prior bad act evidence. Though the briefing frames the argument as prosecutorial or witness misconduct, Irias appears to actually focus his argument on the violation of the pretrial ruling regarding limitation of the ER 404(b). The standard of review for the trial court's cure of irregularities, such as improper testimony, is abuse of discretion. State v. Post, 118 Wn.2d 596, 620, 826 P.2d 172 (1992). Irias argues that in two instances Salazar provided testimony that violated the court's order as to the ER 404(b) evidence that was addressed during motions in limine. The first piece of testimony was when Salazar testified that Irias struck their children at times. Defense counsel objected and moved to strike and the court instructed the jury to disregard the improper testimony.

The second instance was when Salazar testified about instances of sexual coercion. However, since Salazar's testimony was conveyed to the jury via a Spanish-to-English interpreter, the court actually realized she used the term "sexual relations" during her Spanish-language testimony and stopped the interpreter before that information could be presented to the jury in English.

Outside of the presence of the jury, the court had the interpreter provide the full statement in English and then instructed the prosecutor to have further discussion with Salazar about the pretrial rulings. When the jury returned, they were asked if anyone understood Spanish. One juror said they knew a little Spanish and the court instructed the jury that that there is an "art of interpretation and translation" so the jurors should "tune out" the Spanish to the extent they understood any words. Irias did not move for a mistrial, but now argues that the two instances of testimony in violation of the pretrial rulings deprived him of a fair trial.

"To determine the prejudicial effect of an irregular occurrence during trial, we examine the occurrence's seriousness, whether it involved cumulative evidence, and whether the trial court properly instructed the jury to disregard it." State v. Thompson, 90 Wn. App. 41, 46, 950 P.2d 977 (1998). Here, the seriousness of the occurrence is significant since the court made very specific findings as to which prior bad acts were substantially more probative than prejudicial and the improper testimony was directly in violation of the court's order excluding it. Id. at 46. However, we would note the first instance of improper testimony was much more serious than that of the untranslated testimony due to the ability for the jury to comprehend the content of the improper statement. The testimony was not cumulative since no other evidence of abuse of the children or sexual coercion was offered. However, a trial court is provided with wide discretion to cure trial irregularities for improper witness statements. Post, 118 Wn.2d at 620.

Here, the error as to the Spanish-language portion of testimony about sexual misconduct was sufficiently cured since the jury was never provided with

the English interpretation of the statement and no juror indicated they were fluent in Spanish when asked by the court. The comment regarding abuse toward the children was stricken by the court and the court then again provided a curative instruction. We presume the jury followed the court's instruction. Thompson, 90 Wn. App. at 47. Irias has not provided evidence that the instructions of the court to disregard the testimony were not followed.

Ultimately, we must ask whether the two improper statements, when viewed against the background of all the evidence, were so prejudicial that Irias was denied a fair trial. Id. This is not the case. One statement was not conveyed to the jury in a language they could easily understand and the other comment regarding violence toward the children, though clearly improper and interpreted into English, was followed by a curative instruction. Further, given that the defense was focused on challenging credibility of Salazar's testimony regarding the allegation as whole, and the theory that the possibility of obtaining immigration benefits incentivized her to fabricate this event, the problematic testimony did not prejudice Irias such that he was denied a fair trial.

We affirm.

WE CONCUR:

- 12 -