# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  55388-1-II |
| Respondent, | |
| v. | |
| TROY JAROD GLYMPH, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Troy J. Glymph appeals his convictions and sentence for first degree burglary, second degree assault, first degree malicious mischief, first degree rape, and first degree kidnapping.  He argues that (1) the trial court erred by failing to allow him to represent himself; (2) the evidence was insufficient to sustain his conviction for first degree malicious mischief; (3) the trial court erred by admitting evidence of prior violent incidents between Glymph and the victim; (4) the trial court erred by finding that Glymph's convictions for second degree assault, first degree rape, and first degree kidnapping did not constitute the same criminal conduct; (5) the trial court erred by ordering that Glymph's kidnapping sentence be served consecutively; (6) the trial court violated double jeopardy principles by entering convictions for both second degree assault and first degree rape; and (7) the trial court erred by including Glymph's prior out-of-state offense in his offender score.

We agree with Glymph with regard to his challenge to the sufficiency of the evidence for the first degree malicious mischief conviction and to the inclusion of his prior out-of-state offense in the offender score.  However, the remainder of Glymph's arguments fail.  Therefore, we reverse

Glymph's first degree malicious mischief conviction, affirm Glymph's other convictions, and remand to the trial court to dismiss the first degree malicious mischief charge with prejudice and resentence Glymph with a factual comparability analysis of Glymph's prior out-of-state offense.

FACTS

The State charged Glymph by second amended information with first degree burglary, first degree malicious mischief, first degree rape, first degree kidnapping, and two counts of second degree assault (an incident in April 2019 was charged in count two and an incident in early 2019 was charged in count six). The State also charged domestic violence allegations for all counts and deadly weapon enhancements for the charges for first degree burglary, first degree rape, first degree kidnapping, and one of the counts of second degree assault. These charges were based on incidents that occurred between Glymph and his former girlfriend, Jessica Grant. Glymph waived his right to a jury trial and elected to have his case tried to the bench.

A.      MOTION FOR NEW ATTORNEY

Before trial, Glymph moved for appointment of a new attorney. At the motion hearing, Glymph's attorney stated that "Glymph indicated to me his wishes of wanting a new attorney. He does not want to work with me. He wants a different attorney from [the Department of Assigned Counsel]." 1 Verbatim Report of Proceedings (VRP) (June 30, 2020) at 4. Glymph addressed the court and complained that his attorney was not representing him properly. Glymph stated that he had shown his attorney "how to beat the case," but his attorney said it would not work and was doing the opposite of what Glymph asked him to do. 1 VRP (June 30, 2020) at 5. The trial court asked Glymph's attorney if he was aware of any rules of professional conduct that would prohibit him from defending Glymph, and the attorney said no. The trial court denied Glymph's motion.

Later, during the trial, Glymph's attorney stated that Glymph previously made a motion to go pro se that was denied. The trial court also stated that "[t]he motion to go pro se was already heard . . . and denied." 3 VRP (Sept. 9, 2020) at 337. At the end of the trial, Glymph stated that he had previously tried to go pro se. There is no record on appeal to support these statements that there was a motion for self-representation that was ruled on by the trial court.

B.    PRIOR INCIDENTS

Before trial, the State filed a motion to admit evidence of prior incidents between Glymph and Grant pursuant to ER 404(b).[1] The State also filed an offer of proof outlining the incidents to which Grant was intending to testify. As relevant to this appeal, the State sought to introduce evidence regarding the three following incidents:

1. In June 2018, Glymph walked into Grant's room and saw that Grant had received a phone call from another man. Glymph took Grant's phone and broke it in two pieces. Grant told Glymph she would call the police. Glymph then pushed Grant down the stairs and started hitting her. Grant agreed not to call the police to stop Glymph's assault. Grant eventually left her house for the weekend. Glymph called Grant repeatedly to apologize.

2. While Grant was gone for the weekend after the first incident, Grant's brother/roommate let Glymph into the house to collect some of his belongings. When Grant returned to the house, her television was destroyed. The television cables were cut, and liquid had been poured inside the television. Glymph told Grant the dog had destroyed the television.

---

[1] ER 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

3. Grant petitioned the court for a protection order on April 23, 2019. The court granted the protection order prohibiting Glymph from contacting Grant. Grant attempted but was unable to get law enforcement to serve Glymph with the protection order. Grant and Glymph continued to talk over text messages. In those text messages, Glymph threatened Grant and implied that he would harm Grant for her perceived infidelity.

The State argued that evidence regarding these incidents should be admitted to show Grant's credibility and allow the factfinder to understand why Grant, as a victim of domestic violence, did not initially report a charged assault that occurred in early 2019 (count six) to law enforcement. The State also argued that evidence of these incidents would help the factfinder assess Grant's reasonable fear for the second degree assault charge in count two relating to the incident in April 2019.

Glymph opposed the State's motion and filed a motion to exclude evidence of prior bad acts under ER 404(b).

The trial court ruled that it would hear testimony from Grant about the prior incidents before deciding if the incidents happened by a preponderance of the evidence. The trial court explained that, if the incidents did happen by a preponderance of the evidence, they were relevant to the reasonableness of Grant's fear for the second degree assault charge and to Grant's credibility in failing to report the rape right away. The trial court acknowledged that the testimony was prejudicial but was convinced it could disregard the testimony for any improper purpose and would operate as if it was given a limiting instruction.

Grant then testified about the prior incidents as outlined in the State's offer of proof. Specifically, Grant testified that in the summer of 2018, Glymph was living in Grant's garage.

One day, Grant received a phone call from a friend who Glymph did not like. Glymph came into Grant's bedroom and got upset while the phone was ringing. Grant answered the phone. Glymph took Grant's phone, threw it against the wall, and broke it. Grant went downstairs, and Glymph threw her against the stairs. Glymph either tried to hit her or did hit her. Glymph begged Grant not to call the police, but Grant called the police anyway. When Grant told Glymph she was calling the police, Glymph became angrier.

Grant also testified that, after speaking with law enforcement, she left the house for the weekend. When Grant returned to her house, the television in her bedroom was on the floor. A wire on the back of the television was cut, and there was liquid poured on the television. Glymph told Grant that his dog damaged the television.

Grant further testified that, in early 2019, Glymph repeatedly called and texted Grant. In these messages, Glymph called Grant names and threatened her. Glymph said that he would go in front of Grant's house, kill himself in front of her children, and kill her children. One day, Glymph saw Grant's male friend parked in front of her house. Glymph called Grant, beat on her front door, and said he was going to bust the windows of the friend's car. Grant called the police, and the responding officer suggested that she get a restraining order. Grant filled out the paperwork at the sheriff's office and successfully obtained a restraining order against Glymph. Grant only knew Glymph's work address, and she was told at the sheriff's office that they could not serve him. The sheriff's office told Grant to go to a different location and see if another sheriff's office could serve Glymph at his workplace. Grant drove to the other location and was told that they could not serve Glymph either. Grant texted Glymph and told him about the restraining order. Glymph did not care and said, "'Let the cops come.'" 2 VRP (Sept. 8, 2020) at 184.

After Grant testified, the trial court ruled that the three prior incidents were established by a preponderance of the evidence and that Grant's testimony about the prior incidents was admissible because they were relevant to Grant's reasonable fear for the second degree assault charge. The trial court also ruled that the incidents were relevant to explain Grant's failure and delay in reporting the rape and early 2019 assault to law enforcement. Finally, the trial court ruled that the evidence was admissible to rebut a claim that the rape was a consensual sexual act. The trial court again acknowledged that the testimony was prejudicial but stated that the probative nature outweighed the prejudice, especially given that the case was being heard at a bench trial. The trial court stated that it would not give the testimony any undue emphasis and was limiting its admission to the issues articulated.

The trial court made written findings of fact and conclusions of law regarding the admissibility of the prior incidents. These findings of fact and conclusions of law reflected the trial court's oral ruling but did not include any mention of the evidence being admissible to rebut a claim that the rape was a consensual act.

C.    TRIAL TESTIMONY ABOUT CHARGED INCIDENTS

Grant testified at trial about the prior incidents as described above. Grant also testified at trial that in early 2019, Glymph and Grant got into an argument. Glymph grabbed Grant and choked her with both hands until she passed out. Grant eventually got up off the ground and went to her room. Glymph went to Grant's room, took her phone, and threw it at her. The phone hit Grant above her eye, and she started bleeding. Glymph told Grant that if she told anyone, he would kill her children. Grant did not tell anyone.

In April 2019, Grant was asleep upstairs at her home and woke to a loud noise. Grant went downstairs and found Glymph at the bottom of the stairs. Glymph put a pocketknife to Grant's neck, took her to her living room, and asked where "'he[]'" was at. 2 VRP (Sept. 9, 2020) at 188. Grant told Glymph that "'he[]'" was not there, and Glymph responded by going upstairs with the pocketknife to Grant's neck to get Grant's phone. 2 VRP (Sept. 9, 2020) at 188. Grant tried to grab his arm, and Glymph told her he had a gun in his pocket and would shoot her if she tried to take the knife out of his hand.

Glymph went up the stairs with Grant while holding the knife to the back of Grant's neck. At some point when going upstairs, Glymph cut Grant on the finger with the knife, and she started bleeding. According to Grant, Glymph did not want to "call the guy" but instead "wanted to check [her] phone to see if [they were] communicating." 2 VRP (Sept. 9, 2020) at 189. Glymph and Grant then went back downstairs, and Glymph looked through Grant's phone.

After Glymph went through Grant's phone, he threw the phone down. Grant and Glymph then "tussl[ed]" with the knife. 2 VRP (Sept. 9, 2020) at 190. Grant fell on the ground, where Glymph repeatedly tried to stab Grant with the knife. Grant moved around on the floor and kept holding Glymph's hand with the knife to keep Glymph from stabbing her. Glymph repeatedly told Grant that he was going to kill her. Grant tried to convince Glymph that she would be with him and tried to get him to calm down.

After Grant repeatedly stated that she would be with him, Glymph calmed down and stopped trying to stab her. Grant got up and sat down on the couch. Glymph then sat down on the floor, looked at Grant, and said, "'Oh, I'm so sorry. I can't believe it. You are really scared.'" 2

7

VRP (Sept. 9, 2020) at 202. According to Grant, it was "like he switched personality." 2 VRP (Sept. 9, 2020) at 202.

Glymph then told Grant to come over toward him, and Grant said she could not. Glymph again told Grant to come over to him, and she did. Glymph held the knife against Grant's back and told her to take her clothes off. Grant removed her clothes, and Glymph removed his clothes. Glymph got on top of Grant and had sexual intercourse with her while holding the knife to her back. Grant kept asking Glymph to move the knife, and Glymph eventually did.

After the sexual intercourse, Glymph laid on the couch next to Grant and put his arm around her neck so she could not move. At this point, Glymph was calm and eventually fell asleep. Grant told Glymph she was going to use the bathroom, and Glymph loosened his arm. Grant went upstairs, gathered her children, and called 911.

Deputy Danielle Bendixen of the Pierce County Sheriff's Department testified at trial that she responded to Grant's 911 call. When Deputy Bendixen arrived at the house, she saw Glymph on the couch asleep and nude, with a knife in the area next to him. Deputy Bendixen also noticed that a window was open with the screen on the ground, and it was very cold in the house. Law enforcement officers also found blood in the home, including along the staircase. Deputy Bendixen found Grant upstairs with her children and noted that Grant had a cut on her finger. While speaking to law enforcement, Grant mentioned sexual activity occurring between Grant and Glymph, but Grant did not characterize it as a rape.

The next day, Deputy Bendixen returned to Grant's house after Grant reported that her vehicle had been vandalized. Deputy Bendixen found a knife blade in the engine compartment; wires cut in the engine compartment; slash marks on the seats; and damage to the GPS, windshield

wiper and light switch, steering column, and gear shifter. Grant had last driven the vehicle the day before Glymph broke into her home and discovered the damage the day after the incident. On this visit to Grant's home regarding the vehicle vandalism, Grant told Deputy Bendixen that there had been a nonconsensual sexual encounter between Grant and Glymph the evening before.

Glymph testified at trial that he went to Grant's house to pick up a car that Grant's brother was borrowing. Glymph also testified that Grant had asked him to spend the night. Glymph further testified that he did not have a knife and did not have sexual intercourse with Grant. Glymph also denied that he had previously thrown Grant's phone at her or choked her.

D.     VERDICT AND SENTENCING

1.     Verdict

The trial court found Glymph guilty of all charges except for the second degree assault charged in count six.

In its written findings of fact and conclusions of law, the trial court found Glymph guilty of the following: (1) first degree burglary for entering and remaining unlawfully at Grant's home with the intent to commit the crime of assault against Grant; (2) second degree assault as charged in count two for using the folding knife to stab at Grant and attempting to strike her with the knife; (3) first degree malicious mischief for destroying Grant's vehicle by using a knife in a rage to slash the interior and engine compartment Grant's vehicle and "purposely destroy[ing] surfaces and equipment within the vehicle and the vehicle engine compartment rendering the vehicle inoperable and effectively destroying the vehicle," causing damage to a vehicle that was worth more than $10,000; (4) first degree rape for forcing Grant to have sexual intercourse with him while holding the folding knife to Grant's back; and (5) first degree kidnapping for abducting Grant inside her

residence for several hours without access to her phone and threatening to use a folding knife and gun to kill Grant and her children, while having the intent to inflict bodily injury on Grant, which he accomplished with the knife used to attempt to stab Grant, eventually causing injury to her finger. Clerk's Papers (CP) at 109. The trial court also found that Glymph used a deadly weapon during the course of committing first degree burglary, second degree assault (count two), first degree rape, and first degree kidnapping. The trial court found Glymph not guilty of second degree assault as charged in count six, which was the strangulation incident in early 2019.

Before sentencing, the trial court clarified that, in an earlier oral ruling, it stated that Glymph began stabbing Grant and demanding sex by telling her to take her clothes off. The trial court acknowledged that it made it sound like a simultaneous act, but the trial court clarified "that those acts were not simultaneous or necessarily consecutive." 5 VRP (Jan. 8, 2021) at 493. Specifically, the trial court found that Glymph tried to stab Grant while she was lying on the ground and stated that he was going to kill her. The trial court noted that Grant attempted to placate Glymph by saying she would be with him, and Glymph switched his behavior and seemingly could not believe what he had been doing. The trial court specified that the rape occurred after Grant said she could not get up off the couch, when Glymph switched his behavior again and became angry, putting the knife at Grant's back while raping her.

2. Sentencing

a. Same criminal conduct

At sentencing, Glymph argued that the convictions for first degree rape, second degree assault, first degree kidnapping, and first degree malicious mischief constituted the same criminal conduct. The trial court ruled that the first degree malicious mischief conviction did not constitute

10

the same criminal conduct as the other crimes because the first degree malicious mischief conduct occurred before Glymph entered the home and it required different intent than the crimes that occurred inside the house. The trial court also ruled that the first degree rape, second degree assault, and first degree kidnapping convictions did not constitute the same criminal conduct and should be treated separately for sentencing purposes. Specifically, the trial court ruled that

> [t]here was very clearly an independent act of kidnapping when he entered the home, put a knife to [Grant's] neck, and walked her upstairs in order to get her phone for what I assume was to look through the phone to see what, if any, men she was in communication with.
> I agree with the State that at the point that they returned back downstairs, the kidnapping was done. It had been completed. It was an act that was completed.
> He then made the decision to assault [Grant] when they were on the ground by proceeding to attempt to stab her with the knife. That act was completed when she removed herself to the couch.
> That's why I made that change in those findings, because I recall the evidence being that there was a very distinct not only change in the defendant's demeanor but a brief period of I guess calm within the home. And then he got angry again and demanded that she take off the clothes, and then that's when the rape happened.
> So I don't know if that's an argument that these technically occurred at different times or that it was simply that his intent changed. But I do believe based on these facts that there is very different intent not only statutorily but based on the evidence that was presented at trial.

5 VRP (Jan. 8, 2021) at 520-21.

> b. Double jeopardy

Glymph argued that the trial court would violate double jeopardy if it entered convictions for both second degree assault and first degree rape. The State argued that the trial court should not go through a double jeopardy analysis because there were factually separate acts charged as separate crimes. The State also argued that, even with the double jeopardy analysis, second degree

11

assault and first degree rape require different intents. Specifically, assault requires intentional assault, while the rape statute contains a sexual intercourse requirement with no intent requirement.

The trial court ruled that it did not know if a double jeopardy analysis was necessary because there were two different intents for Glymph's acts of stabbing at Grant on the floor and holding a knife to Grant's back while raping her. But the trial court stated that even if a double jeopardy analysis was necessary, the two crimes had an independent purpose or effect because the rape with the knife was separate and after the completed assault with the knife on the floor.

### c. Out-of-state offense

The State argued that the trial court should count Glymph's prior Virginia conviction for malicious wounding in Glymph's offender score. The State asserted that the Virginia statute for malicious wounding was comparable to the Washington statute for first degree assault.

The trial court compared the two statutes and ruled that the Virginia offense was narrower because it required the defendant to inflict injury. The trial court also ruled that the intent to inflict great bodily harm in the Washington statute can be equated to the intent to main, disfigure, disable, or kill as required in the Virginia statute. Accordingly, the trial court found that Glymph's prior malicious wounding conviction in Virginia counted as a prior conviction in Glymph's offender score.[2]

### d. Consecutive kidnapping sentence

As noted above, the trial court ruled that the first degree rape, second degree assault, and first degree kidnapping convictions did not constitute the same criminal conduct and should be

---

[2] The State did not present evidence to support a factual comparison of the offenses, and the trial court did not undergo a factual analysis.

treated separately for sentencing purposes. Therefore, the trial court ordered that Glymph serve his sentence for first degree kidnapping consecutively to his sentence for first degree rape.

After addressing the sentencing issues above, the trial court sentenced Glymph to 344 months total confinement.

Glymph appeals.

## ANALYSIS

A.    REQUEST FOR SELF-REPRESENTATION

Glymph argues that the trial court erred by failing to allow him to represent himself. We disagree.

We review a trial court's denial of a request to self-represent for an abuse of discretion. *State v. Madsen*, 168 Wn.2d 496, 504, 229 P.3d 714 (2010). A court abuses its discretion if its decision is manifestly unreasonably, rests on unsupported facts, or was reached by applying an incorrect legal standard. *Id.*

The Washington Constitution and the United States Constitution guarantee criminal defendants the right to self-representation. *State v. Curry*, 191 Wn.2d 475, 482, 423 P.3d 179 (2018). Defendants are afforded this fundamental right despite the potentially detrimental impact on the defendant and the administration of justice. *Madsen*, 168 Wn.2d at 503. "The unjustified denial of this right requires reversal." *State v. Stenson*, 132 Wn.2d 668, 737, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998).

However, the right to self-representation is neither absolute nor self-executing. *Madsen*, 168 Wn.2d at 504. The defendant must unequivocally request to proceed by self-representation before he can be permitted to do so. *Curry*, 191 Wn.2d at 482-83. Whether a defendant's request

for self-representation is unequivocal is determined on a case-by-case basis, considering the defendant, the circumstances, and the request. *Id.* at 485. "[A]n unequivocal request to proceed [by self-representation] requires a defendant to 'make an explicit choice between exercising the right to counsel and the right to self-representation so that a court may be reasonably certain that the defendant wishes to represent himself.'" *Id.* at 490 (quoting *United States v. Arlt*, 41 F.3d 516, 519 (9th Cir. 1994)). In order for the trial court to be reasonably certain that a defendant wishes to represent himself, the trial court must first determine whether (1) a request was made at all, and (2) if so, whether the defendant's request reflected a desire to exercise the right to self-representation. *Id.*

Here, Glymph moved for a new attorney before trial. At the hearing on the motion, Glymph's attorney told the trial court that Glymph wanted a new attorney, did not want to work with him, and wanted a different attorney from the Department of Assigned Counsel. Glymph then addressed the court and made several complaints about his attorney not representing him properly. VRP (June 30, 2020) at 5. In his statements to the trial court, Glymph did not make any request for self-representation nor did Glymph make any statements that can be interpreted as his expressing an explicit choice to exercise his right to self-representation. Therefore, the trial court could not have been reasonably certain, or even known, that Glymph wished to represent himself.

The record shows that Glymph did not make an unequivocal request to self-represent. Because Glymph's statements did not constitute an unequivocal request to represent himself, the trial court did not abuse its discretion by failing to allow Glymph to represent himself.

14

B.      SUFFICIENCY OF THE EVIDENCE—FIRST DEGREE MALICIOUS MISCHIEF

Glymph argues that there is insufficient evidence to support his conviction for first degree malicious mischief. We agree.

1.      Legal Principles

a.      Standard of review

We review a challenge to the sufficiency of the evidence de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). We view the evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). "Specifically, following a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *Id*. "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *Id*. at 106 (quoting *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005)).

An insufficiency of the evidence claim admits the truth of the State's evidence and all reasonable inferences that can be drawn from that evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All such inferences "must be drawn in favor of the State and interpreted most strongly against the defendant." *Id*. Direct and circumstantial evidence are equally reliable. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). And this court defers to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of evidence. *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007).

b.      First degree malicious mischief

To convict Glymph of first degree malicious mischief, the State must prove that Glymph knowingly and maliciously caused physical damage to the property of another in an amount exceeding five thousand dollars.  RCW 9A.48.070(1)(a).

2.      Analysis

Here, Glymph argues that the evidence is insufficient to prove that he is the person who caused the damage to Grant's vehicle.  He does not challenge that Grant's property was damaged in an amount exceeding five thousand dollars.

The trial court concluded that Glymph was guilty of first degree malicious mischief based on its findings that Glymph used a knife to slash the interior and engine compartment of Grant's vehicle and "purposely destroyed surfaces and equipment within the vehicle and the vehicle engine compartment rendering the vehicle inoperable and effectively destroying the vehicle."  CP at 109.  But these findings are unsupported by the evidence the State presented at trial.  While the State presented evidence of the damage itself and evidence that the damage was discovered within approximately one day of Glymph's crimes in Grant's home, the State did not present any evidence of when the damage to Grant's car was caused or that Glymph was the cause of the damage.  Even drawing all reasonable inferences from the evidence in favor of the State, the evidence is insufficient to persuade a fair-minded person that Glymph was the person who caused the damage and that Glymph did so knowingly and maliciously.  *See Salinas*, 119 Wn.2d at 201.  Therefore, substantial evidence does not support the trial court's findings that Glymph knowingly and maliciously damaged Grant's car, and this court should hold that the evidence is insufficient to sustain Glymph's conviction for first degree malicious mischief.  *See Homan*, 181 Wn.2d at 105-

06. Accordingly, we reverse Glymph's conviction for first degree malicious mischief and remand for the trial court to vacate Glymph's malicious mischief conviction and dismiss the malicious mischief charge with prejudice.

C.     ADMISSION OF EVIDENCE OF PAST INCIDENTS

Glymph argues that the trial court erred by admitting evidence of past violent incidents that happened between him and Grant. Specifically, Glymph argues that the trial court should not have admitted the evidence because it was not relevant and was more prejudicial than probative. We disagree.

1.     No Abuse Of Discretion

A trial court's admission of evidence is reviewed for an abuse of discretion. *State v. Gunderson*, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014). Abuse of discretion occurs when a trial court's decision is manifestly unreasonable or based on untenable grounds. *Id.* A trial court abuses its discretion if no reasonable person would have decided the matter as the trial court did. *State v. Salgado-Mendoza*, 189 Wn.2d 420, 427, 403 P.3d 45 (2017).

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." ER 404(b). But the same evidence may be admissible for other purposes, depending on its relevance and the balancing of its probative value against the danger of unfair prejudice. *Gunderson*, 181 Wn.2d at 922. We use the following four-part test to determine if ER 404(b) evidence is admissible:

> "To admit evidence of a person's prior misconduct, the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect."

*State v. Ashley*, 186 Wn.2d 32, 39, 375 P.3d 673 (2016) (internal quotations omitted) (quoting *State v. Gresham*, 173 Wn.2d 405, 421, 269 P.3d 207 (2012)).

Here, Glymph takes issue with the third and fourth prongs. He argues that evidence of the prior incidents between him and Grant should not have been admitted because it was not relevant and because the prejudicial effect outweighed the probative value.

> a.  Relevance

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

The trial court found that the evidence was relevant for three reasons: (1) determining the reasonableness of Grant's fear for the second degree assault charge, (2) explaining Grant's delay in reporting one prior assault and rape to law enforcement, and (3) rebutting Glymph's claim that the rape was a consensual act.

> i.  Reasonableness of Grant's fear

To prove that Glymph committed second degree assault, the State was required to prove that Glymph intentionally assaulted Grant with a deadly weapon. RCW 9A.36.021(1)(c). Because "assault" is not defined in the statute, this court looks to the common law for definitions. *State v. Houston-Sconiers*, 188 Wn.2d 1, 14 n.1, 391 P.3d 409 (2017). One recognized definition of "assault" is "an act done with intent to create in another apprehension and fear of bodily injury, and that in fact creates in another a reasonable apprehension and imminent fear of bodily injury." *Davis v. King County.*, 16 Wn. App. 2d 64, 72, 479 P.3d 1181 (2021). A victim's knowledge of a

defendant's prior violent acts is relevant to demonstrate the reasonableness of a victim's fear when it is material to the charges at issue. *See State v. Barragan*, 102 Wn. App. 754, 760, 9 P.3d 942 (2000) (prior assaults admissible to show that victim reasonably feared defendant would carry out threats for harassment charge); *State v. Ragin*, 94 Wn. App. 407, 411-12, 972 P.2d 519 (1999) (defendant's prior violent acts admissible to show that victim reasonably feared defendant's threats for felony harassment charge).

Here, the trial court admitted Grant's testimony about Glymph's prior violent acts against Grant to allow the factfinder to assess the reasonableness of Grant's fear for the second degree assault charge. Because the charge at issue, second degree assault, involves showing that the victim was in reasonable apprehension and imminent fear of bodily injury, the reasonableness of Grant's fear was material to the charge at issue. *See Davis*, 16 Wn. App. 2d at 72. Therefore, Grant's knowledge of Glymph's prior violent acts was relevant to demonstrate the reasonableness of her fear. *See Barragan*, 102 Wn. App. at 760; *Ragin*, 94 Wn. App. at 411-12.

ii.      Assessing Grant's credibility

The trial court also found that evidence of the prior incidents was relevant for the factfinder to determine Grant's credibility, as she failed to report the early 2019 assault and delayed in reporting the rape to law enforcement.

Prior acts of domestic violence are admissible in cases where the State has established their overriding probative value, such as to explain a witness's otherwise inexplicable recantation or conflicting account of events. *Gunderson*, 181 Wn.2d at 925. Admissibility is not confined to "instances involving a recantation or an inconsistent account by a witness." *Id.* at 925 n.4. A defendant's prior acts of domestic violence against the victim may be admissible to assist the

factfinder in assessing a victim's credibility when the victim did not seek help from law enforcement. *See State v. Woods*, 198 Wn. App. 453, 460, 393 P.3d 886 (2017) (prior acts of domestic violence admissible where victim of forced prostitution refused to seek help from friends, family, and police); *State v. Baker*, 162 Wn. App. 468, 475, 259 P.3d 270 (prior acts of domestic violence admissible where victim did not contact police to report violent acts), *review denied*, 173 Wn.2d 1004 (2011).

Here, Grant did not report the early 2019 strangulation incident to police, and she delayed in reporting the rape to police. Glymph's prior violent acts against Grant would shed light on the dynamics of their relationship and explain why Grant did not immediately report the strangulation and rape to law enforcement. Therefore, evidence of the prior violent acts was relevant to allow the factfinder to assess Grant's credibility.

### iii. Rebut consent defense

Lastly, the trial court found that evidence of the prior incidents was relevant to rebut Glymph's claim that the rape was a consensual act.

A defendant's prior acts of domestic violence against the victim may be relevant to show a victim's lack of consent. *See Ashley*, 186 Wn.2d at 42 (prior acts of domestic violence material and relevant to victim's lack of consent for unlawful imprisonment charge). Glymph argues that evidence of the prior incidents was not relevant to the issue of consent because Glymph did not ultimately raise the consent defense and instead testified he did not have sex with Grant at all. However, Glymph's attorney stated in his opening statement that the evidence would show Grant and Glymph had consensual sex.

Additionally, the State is entitled to present its case so it can prove every essential element of a crime beyond a reasonable doubt. *Id.* at 43 n.4. To prove that Glymph committed first degree rape, the State was required to prove that he engaged in sexual intercourse with Grant by forcible compulsion. RCW 9A.44.040(1). Consent negates the element of forcible compulsion. *State v. W.R.*, 181 Wn.2d 757, 763, 336 P.3d 1134 (2014). Therefore, evidence of the prior incidents was relevant to prove the essential element of forcible compulsion for the first degree rape charge. *See Ashley*, 186 Wn.2d at 43 n.4.

> b.      Probative value outweighs prejudicial effect

Glymph argues that the trial court erred in finding that the probative value of the prior incidents outweighed their prejudicial effect. We disagree.

The trial court twice acknowledged the prejudice resulting from testimony about the prior incidents. But the trial court found that the probative nature of the evidence on the three issues discussed above outweighed any prejudice and that the risk of prejudice was further mitigated because the case was being tried to the bench. The trial court noted that it was convinced it could disregard the testimony for any improper purpose, was limiting the admission to the three relevant issues articulated, and would operate as though it was given a limiting instruction.

Given the relevancy of the evidence to the three issues discussed above and the great lengths the trial court went to in limiting the prejudicial impact of the evidence, the trial court's admission of the prior incidents was not manifestly unreasonable or based on untenable grounds.

Accordingly, the trial court did not abuse its discretion in admitting evidence of the prior incidents that occurred between Glymph and Grant.[3]

D.      SAME CRIMINAL CONDUCT

Glymph argues that the trial court erred by finding that Glymph's convictions for second degree assault, first degree rape, and first degree kidnapping did not constitute the same criminal conduct. We disagree.

A trial court's determination of what constitutes "same criminal conduct" for purposes of calculating an offender score will not be reversed absent an abuse of discretion or misapplication of the law. *State v. Graciano*, 176 Wn.2d 531, 536, 295 P.3d 219 (2013). Under the Sentencing

---

[3] We note that even if the trial court erred in admitting evidence of Glymph's prior bad acts, we hold that the error was harmless. Because the alleged error is not constitutional, we apply the nonconstitutional harmless error standard, which requires us to decide whether, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected. *Gunderson*, 181 Wn.2d at 926. And following a bench trial, we presume that the judge followed the law and considered evidence solely for proper purposes. *State v. Disney*, 199 Wn. App. 422, 432, 398 P.3d 1218 (2017).

Here, the trial court limited the admission of the evidence to the three following issues: (1) evaluating the reasonableness of Grant's fear for the second degree assault charge involving the April 2019 incident, (2) assessing Grant's credibility in delaying reporting the early 2019 strangulation and the rape, and (3) rebutting Glymph's consent defense for the first degree rape charge. On the second degree assault charge involving the April 2019 incident, the trial court explicitly found after trial that it would have found reasonable fear existed "even without the evidence of prior incidents admitted under ER 404(b)." CP at 107. And as to Grant's credibility, the trial court found Glymph not guilty of the second degree assault charge resulting from the strangulation incident in early 2019; therefore, the evidence of prior incidents did not adversely affect Glymph. On the rape charge, Grant testified that Glymph raped her while holding a knife to her back. Glymph had previously held a knife to the back of Grant's neck while forcing her upstairs and cut her finger along the way. When police arrived at Grant's home, they found Glymph naked on the couch with a knife in the area next to him. Therefore, there is no reasonable probability that the outcome of the trial would have been materially affected had the evidence of the prior incidents not been admitted on these issues.

Reform Act of 1981,[4] multiple current offenses are presumptively counted separately in determining a defendant's offender score unless the trial court finds that current offenses encompass the "same criminal conduct" and the crimes are then counted as one crime in determining the offender score. RCW 9.94A.589(1)(a).[5]

"Same criminal conduct" is defined as "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). All three elements must be met for the crimes to constitute the same criminal conduct. *Graciano*, 176 Wn.2d at 540. The defendant bears the burden of proving same criminal conduct. *Id*.

In this context, intent is not the particular *mens rea* element of the particular crime but is instead the offender's objective criminal purpose in committing the crime. *State v. Rattana Keo Phuong*, 174 Wn. App. 494, 546, 299 P.3d 37 (2013), *review denied*, 182 Wn.2d 1022 (2015). "[W]hen an offender has time to 'pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act,' and makes the decision to proceed, he or she has formed a new intent to commit the second act." *State v. Munoz-Rivera*, 190 Wn. App. 870, 889, 361 P.3d 182 (2015) (quoting *State v. Grantham*, 84 Wn. App. 854, 859, 932 P.2d 657 (1997)).

Here, Glymph kidnapped Grant when he walked her upstairs while holding the knife to her neck. The trial court found that, at that time, Glymph had the intent to look through Grant's phone

---

[4] Chapter 9.94A RCW

[5] RCW 9.94A.589 was amended in 2020. No substantive changes were made affecting this appeal. Therefore, we cite to the current statute.

to see if she was communicating with other men. The trial court also found that the act of kidnapping was completed when Glymph and Grant returned downstairs.

Glymph then committed assault by attempting to stab Grant while she was on the ground. At this time, Glymph had a different intent and repeatedly stated that he was trying to kill Grant. The trial court found that the assault was completed when Grant sat on the couch.

There was then a distinct change in Glymph's demeanor, and he became calm. Glymph sat down, looked at Grant, and apologized to her. During this time, Glymph had time to pause, reflect, and cease his criminal activity. Instead, Glymph again grew angry when Grant would not come over to him, held the knife to her, and raped her. By doing so, Glymph had formed a new intent to commit the act of rape. *See Munoz-Rivera*, 190 Wn. App. at 889. Therefore, Glymph had a different criminal intent during each of his crimes. *See Rattana Keo Phuong*, 174 Wn. App. at 546.

Glymph argues that he intended to "harm" Grant throughout each of his crimes. Br. of Appellant at 25. Without more, Glymph fails to meet his burden of proving he had the same criminal intent during and throughout his crimes. Accordingly, we hold that the trial court did not abuse its discretion by finding that Glymph's convictions for second degree assault, first degree rape, and first degree kidnapping did not constitute the same criminal conduct.

E.     CONSECUTIVE KIDNAPPING SENTENCE

Glymph argues that the trial court erred by ordering him to serve his kidnapping sentence consecutively to his other sentences. We disagree.

Under RCW 9.94A.589(1)(b), sentencing courts are required to impose consecutive sentences when a defendant is convicted of two or more "serious violent offenses" that arise from

"separate and distinct criminal conduct." It is well established that when an offense does not constitute the "same criminal conduct," it is necessarily separate and distinct. *State v. Cubias*, 155 Wn.2d 549, 552, 120 P.3d 929 (2005).

Here, Glymph was convicted of first degree kidnapping and first degree rape, both of which are serious violent offenses. RCW 9.94A.030(46)(vi), (vii).[6] As discussed above, the first degree kidnapping and first degree rape convictions did not constitute the same criminal conduct. Therefore, the offenses are necessarily separate and distinct, and the trial court was required to impose the kidnapping sentence consecutively to his other sentences. *See* RCW 9.94A.589(1)(b); *Cubias*, 155 Wn.2d at 552. Accordingly, the trial court did not err by ordering Glymph to serve his kidnapping sentence consecutively to his other sentences.

F.     DOUBLE JEOPARDY

Glymph argues that the trial court violated double jeopardy principles by entering convictions for both second degree assault and first degree rape. We disagree.

We review claims of double jeopardy de novo. *State v. Fuller*, 185 Wn.2d 30, 34, 367 P.3d 1057 (2016). The right to be free from double jeopardy protects a defendant from being punished multiple times for the same offense. *Id.* at 33-34. We apply a three-step analysis to determine whether the legislature authorized multiple punishments for a single course of conduct. *State v. Thompson*, 192 Wn. App. 733, 737, 370 P.3d 586, *review denied*, 185 Wn.2d 1041 (2016). First, we consider the legislative intent based on the criminal statutes involved. *Id.* Second, if the statutes are silent, this court applies the "same evidence" test, which asks whether, as charged,

---

[6] RCW 9.94A.030 was amended in 2020 and in 2021. No substantive changes were made affecting this appeal. Therefore, we cite to the current statute.

each offense includes elements not included in the other and whether proof of one offense would also prove the other. *Id*. Third, if applicable, we may apply the merger doctrine to determine legislative intent "where the degree of one offense is elevated by conduct constituting a separate offense." *Id*. at 737-38. However, even if two convictions appear to merge under this analysis, they may be punished separately if the defendant's particular conduct demonstrates an independent purpose or effect of each. *Id*. at 738.

Here, neither the second degree assault nor the first degree rape statutes expressly or implicitly authorize cumulative punishment for the separate crimes, nor do the statutes expressly or implicitly authorize the crimes to be punished separately. *See* RCW 9A.36.021; RCW 9A.44.040. Therefore, it is unclear whether the legislature intended to authorize cumulative punishment for the separate crimes.

Under the "same evidence" test, the defendant's double jeopardy rights are violated if he is convicted of offenses that are identical in both fact and in law. *State v. Fuentes*, 179 Wn.2d 808, 824, 318 P.3d 257 (2014). If each conviction includes elements not included in the other and requires proof of a fact that the other does not, the offenses are different and the separate convictions may stand. *State v. Hughes*, 166 Wn.2d 675, 682, 212 P.3d 558 (2009). "The test is whether the crimes, as charged, each require proof of a fact that the other does not, not whether any hypothetical method of committing each crime may require proof of an additional fact." *State v. Williams*, 156 Wn. App. 482, 493, 234 P.3d 1174, *review denied*, 170 Wn.2d 1011 (2010).

Here, to prove that Glymph committed first degree rape, the State needed to prove that Glymph engaged in sexual intercourse with Grant by forcible compulsion while using or threatening to use a deadly weapon. RCW 9A.44.040(1)(a). To prove that Glymph committed

26

second degree assault, the State needed to prove that Glymph assaulted Grant with a deadly weapon. RCW 9A.36.021(1)(c). Because "assault" is not defined in the statute, this court looks to the common law for definitions. *Houston-Sconiers*, 188 Wn.2d at 14 n.1. Washington recognizes three definitions of "assault," and all three definitions require a showing of intent.[7] *Davis* 16 Wn. App. 2d at 72. Thus, the State was required to show Glymph's intent for the second degree assault charge but not for the first degree rape charge. And the State was required to show sexual intercourse for the first degree rape charge but not the second degree assault charge. Therefore, each conviction requires proof of a fact that the other does not, and the offenses are not identical in law.[8] *See Hughes*, 166 Wn.2d at 682.. Accordingly, the trial court did not violate double jeopardy by entering convictions for both second degree assault and first degree rape, and the separate convictions may stand.

G.      PRIOR OUT-OF-STATE OFFENSE

---

[7]

> Washington recognizes three common law definitions of "assault": (1) an intentional touching (actual battery); (2) an act done with intent to inflict bodily injury on another, tending but failing to accomplish it; and (3) an act done with intent to create in another apprehension and fear of bodily injury, and that in fact creates in another a reasonable apprehension and imminent fear of bodily injury.

*Davis*, 16 Wn. App. 2d at 72.

[8] Some courts have held that second degree assault and first degree rape merge where the assault was used to effectuate the rape and the assault had no purpose or effect independent of the rape. *See Williams*, 156 Wn. App. at 495; *State v. Hudlow*, 36 Wn. App. 630, 632, 676 P.2d 553 (1984). That is not the case here, where Glymph committed the assault by stabbing at Grant and telling her that he would kill her, with no intent to effectuate a rape, then later raped Grant after she convinced him they could be together. Therefore, *Williams* and *Hudlow* are distinguishable, and Glymph's separate convictions for second degree assault and first degree rape do not merge.

27

Glymph argues that the trial court erred in including his prior out-of-state offense in calculating his offender score. We agree.

We review the calculation of an offender score de novo. *State v. Howard*, 15 Wn. App. 2d 725, 731, 476 P.3d 1087 (2020), *review denied*, 197 Wn.2d 1006 (2021). RCW 9.94A.525 explains the process for how a defendant's offender score is calculated. Out-of-state convictions are classified according to their comparable Washington offense. RCW 9.94A.525(3).

Washington has a two-part test for comparing out-of-state convictions. *State v. Olsen*, 180 Wn.2d 468, 472, 325 P.3d 187, *cert. denied*, 574 U.S. 912 (2014). First, the court must determine if the crimes are legally comparable by comparing the elements of the out-of-state conviction to the elements of the relevant Washington crime. *Id*. If the other state's statute is identical to or narrower than the Washington statute, then the out-of-state conviction counts towards the defendant's offender score as if it were the Washington offense. *Id.* at 472-73.

However, if the other state's statute is broader than Washington's statute, the court must determine factual comparability by looking at whether the defendant's conduct in the out-of-state conviction would have violated the comparable Washington statute. *Id.* at 473. In doing so, the sentencing court may "consider only facts that were admitted, stipulated to, or proved beyond a reasonable doubt." *Id.* at 473-74. The State bears the burden of proving the comparability of out-of-state convictions. *Id.* at 472.

Here, the trial court counted Glymph's prior Virginia offense for malicious wounding toward his offender score. Virginia's malicious wounding statute provides:

> If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony.

28

Va. Code § 18.2-51. For a malicious wounding conviction, the Commonwealth must prove that the defendant (1) caused (2) a wound or bodily injury (3) maliciously and (4) with the intent to kill or permanently maim, disfigure, or disable. To be guilty of malicious wounding, the defendant must intend to permanently, not merely temporarily, harm another person. *Burkeen v. Commonwealth*, 286 Va. 255, 259, 749 S.E.2d 172 (2013).

> Washington's first degree assault statute provides in relevant part that
>
> [a] person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm . . . [a]ssaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death.

RCW 9A.36.011(1)(a).[9][10] "Great bodily harm" is "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4)(c). Assault is defined as either "(1) an unlawful touching (actual battery); (2) an attempt with unlawful force to inflict bodily injury upon another, tending but failing to accomplish it (attempted battery); [or] (3) putting another in apprehension of harm." *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009).

While the Virginia statute appears narrower in that it requires the defendant to have actually caused a wound or bodily injury, the Virginia statute does not include Washington's requirement that the action take place "with a firearm or any deadly weapon or by any force or means likely to

---

[9] RCW 9A.36.011 was amended in 2020. No substantive changes were made affecting this appeal. Therefore, we cite to the current statute.

[10] At trial and on appeal, the State only provided argument on this subsection of the first degree assault statute.

produce great bodily harm or death." RCW 9A.36.011(1)(a). In fact, the bodily injury required by the Virginia statute "can be '*any bodily hurt* whatsover' caused *by any means*." *Commonwealth v. Perkins*, 295 Va. 323, 328, 812 S.E.2d 212 (2018) (quoting *Bryant v. Commonwealth*, 189 Va. 310, 316, 53 S.E.2d 54 (1949)). Therefore, the Virginia statute is broader than Washington's statute in at least one aspect.

Because the out-of-state statute is broader, this court must determine factual comparability. *See Olsen*, 180 Wn.2d at 473. However, the State did not provide evidence of Glymph's conviction to support a factual comparison. Therefore, we hold that the trial court erred in including Glymph's prior out-of-state offense in calculating his offender score.

On remand for resentencing following an appeal, the parties are permitted to present all relevant evidence regarding the defendant's criminal history, including criminal history not previously presented. RCW 9.94A.530(2); *State v. Jones*, 182 Wn.2d 1, 11, 338 P.3d 278 (2014). Accordingly, we remand to the trial court for resentencing and allow the State to present factual evidence of Glymph's Virginia conviction.[11]

## CONCLUSION

We hold that the trial court did not err by failing to allow Glymph to represent himself; the evidence was insufficient to sustain the first degree malicious mischief conviction; the trial court did not err by admitting evidence of prior violent incidents between Glymph and the victim; the

---

[11] Glymph also assigns error to several findings of fact but does not provide argument regarding those findings. RAP 10.3(6) requires parties to provide argument in support of the issues presented for review. Where a party fails to provide argument on an issue, we are "not required to construct an argument on behalf of appellants." *State v. Cox*, 109 Wn. App. 937, 943, 38 P.3d 371 (2002). Accordingly, we decline to address Glymph's unargued assignments of error.

trial court did not err by finding that Glymph's convictions for second degree assault, first degree rape, and first degree kidnapping did not constitute the same criminal conduct; the trial court did not err by ordering that Glymph's kidnapping sentence be served consecutively; the trial court did not violate double jeopardy principles by entering convictions for both second degree assault and first degree rape; and the trial court erred by including Glymph's prior out-of-state offense in his offender score. Accordingly, we reverse Glymph's conviction for first degree malicious mischief, affirm Glymph's other convictions, and remand to the trial court to dismiss the first degree malicious mischief charge with prejudice and for resentencing after conducting a factual comparability analysis of Glymph's prior out-of-state offense.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Worswick, P.J.

_____
Veljacic, J.