IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>     Respondent,<br><br>  v.<br><br>BRENNARIS MARQUIS JOHNSON,<br><br>     Appellant. | No. 83738-9-I<br><br>ORDER DENYING MOTION<br>FOR RECONSIDERATION,<br>WITHDRAWING OPINION,<br>AND SUBSTITUTING<br>OPINION |

Appellant Brennaris Johnson has moved for reconsideration of the published opinion filed on October 16, 2023. The respondent State of Washington has filed an answer. The panel has considered the motion pursuant to RAP 12.4 and has determined that the motion should be denied, the opinion should be withdrawn, and a substitute opinion be filed.

Now, therefore, it is hereby

ORDERED that the appellant's motion for reconsideration is denied; and it is further

ORDERED that the published opinion filed on October 16, 2023, is withdrawn; and it is further

ORDERED that a substitute published opinion be filed.

_____
Smith, C.J.

_____
Birk, J.

_____
Cheung, J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 83738-9-I |
| Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| BRENNARIS MARQUIS JOHNSON, | |
| Appellant. | |

SMITH, C.J. — Brennaris Marquis Johnson appeals a jury verdict finding him guilty of second degree assault and felony violation of a no-contact order. On appeal, Johnson contends that the trial court erred by (1) instructing the jury that fourth degree felony assault was a lesser degree offense to second degree assault, (2) admitting evidence of prior assaults against the victim in this case, (3) imposing an exceptional sentence, (4) making an impermissible factual finding when it imposed an exceptional sentence, and (5) imposing a longer than statutorily permitted sentence on the no-contact order violation. Not finding his first four arguments persuasive, we affirm the convictions. However, we agree that Johnson's sentence for the violation of the no-contact order is longer than statutorily permissible and remand for the court to correct the sentence.

## FACTS

Brennaris Marquis Johnson and Nicole Trichler began dating in early 2020. Following an incident in August 2020, Johnson was arrested and a

no-contact order protecting Trichler was entered.  Despite the no-contact order, the parties stayed in contact.

In late January 2021, while the no-contact order was still in place, Trichler picked Johnson up from jail and the two spent a handful of days at Trichler's apartment.  During this time, Johnson was "very argumentative" and accused Trichler of stealing his stimulus check[1] and cheating on him.  When Trichler denied stealing the check, Johnson responded by hitting her under the jaw. Trichler asked Johnson why he had hit her, but Johnson just walked away before then turning around and punching Trichler repeatedly on her head, like he would hit a punching bag.  Trichler again asked Johnson why he had hit her.  In response, Johnson again struck Trichler on her temple.  He then told Trichler that he could "do this and nobody would ever see a bruise."  Trichler's head started to hurt and she asked Johnson if she could take some aspirin.  Trichler testified at trial that at this point in time, she was trying not to get upset because she didn't want Johnson to accuse her of playing the victim.  Trichler took four aspirin for the pain.

About 15 minutes later, Trichler described hearing a buzzing noise and feeling an intense pressure in her head.  Trichler told Johnson to call 911 because she felt like she was "going to die."[2]  By the time emergency personnel responded, Trichler was "crawling around" on her hands and knees.  One of the

---

[1] During the COVID-19 pandemic, the federal government issued "Economic Impact Payments," commonly known as "stimulus checks" to eligible recipients as part of the pandemic relief.

[2] Johnson had taken Trichler's phones away from her at this point.

2

responding emergency medical technicians (EMTs) checked Trichler's vital signs, concluded she was not in danger of serious injury, and advised her to visit a walk-in clinic. Trichler did not report any assault to the EMTs or tell them that she and Johnson had been arguing.

Once the EMTs departed, Trichler's condition steadily deteriorated. She began to vomit and asked Johnson to call 911 again. When the EMTs returned, Johnson or Trichler[3] told them that Trichler had used methamphetamine and had been drinking rum that day. The EMTs changed their impression of the incident to one involving substance abuse, reasoning that Trichler's headache was from her drug and alcohol use. The EMTs then drove Trichler to the hospital.

At the hospital, Trichler told staff she had used methamphetamine and immediately developed a severe headache. She denied any assault or trauma. A CT[4] scan revealed Trichler had a subdural hematoma, a type of inner brain bleed. Trichler was transferred to the trauma and acute care surgery team for brain surgery to remove the hematoma. After the surgery, Trichler spent several days recovering in the hospital.

Trichler initially blamed the aspirin for her condition. But after talking with her mother, Trichler realized the severity of her injuries and decided to report the assault to police. Johnson was subsequently charged with second degree assault and felony violation of a no-contact order.

---

[3] Trichler testified that Johnson relayed this information to the EMTs but EMT Galen Wallace testified that Trichler told him herself.

[4] Computerized tomography.

3

Before trial, during motions in limine, the State moved to admit evidence of Johnson's prior assaults against Trichler. The State argued that Trichler's credibility would be a primary issue because of her delay in reporting and general denial of the assault. After hearing pretrial testimony from Trichler, the court granted the State's motion, subject to a limiting instruction. The State also requested that the jury be instructed on fourth degree felony assault as a lesser degree offense of second degree assault. Johnson objected. The court noted that the jury could conclude Trichler's injuries were caused by something other than the assault, such as a fall, and preliminarily granted the State's request.

The jury found Johnson guilty as charged, and the trial court sentenced him to a total of 168 months of confinement and 30 months of community custody. Johnson appeals.

ANALYSIS

Lesser Degree Offense

Johnson contends that the court violated his due process rights by instructing the jury on fourth degree felony assault as a lesser degree offense of second degree assault, denying that it is a lesser degree offense. He maintains that even if fourth degree felony assault is a lesser degree offense, the evidence did not support such an instruction. He also argues that, although the jury did not convict him of fourth degree felony assault, he suffered substantial prejudice because the State introduced evidence to support that instruction. We conclude that the instruction was not given in error.

4

Criminal defendants are generally entitled to notice of the charges they are to meet at trial and may be convicted only of the crimes charged in the information. State v. Tamalini, 134 Wn.2d 725, 731, 953 P.2d 450 (1998). But when a defendant is charged with an offense consisting of different degrees, the jury may find the defendant guilty of a lesser degree[5] of the charged offense. RCW 10.61.003. A trial court may instruct the jury on a lesser degree offense when

> "(1) the statutes for both the charged offense and the proposed [lesser] degree offense proscribe but one offense; (2) the information charges an offense that is divided into degrees, and the proposed offense is a [lesser] degree of the charged offense; and (3) there is evidence that the defendant committed only the [lesser] offense."

State v. Fernandez-Medina, 141 Wn.2d 448, 454, 6 P.3d 1150 (2000) (internal quotation marks omitted) (quoting State v. Peterson, 133 Wn.2d 885, 891, 948 P.2d 381 (1997)).

"The standard of review applied to a trial court's decision to give a jury instruction depends on whether that decision was based on an issue of law or fact." State v. Loos, 14 Wn. App. 2d 748, 760, 473 P.3d 1229 (2020). The first two prongs of the Fernandez-Medina test are legal questions, which we review de novo. Loos, 14 Wn. App. 2d at 760. The third prong presents a question of

---

[5] A lesser degree offense is a close cousin of a lesser included offense. A lesser included offense instruction is warranted where (1) each of the elements of the lesser offense are a necessary element of the offense charged and (2) the evidence in the case supports an inference that the lesser crime was committed. State v. Workman, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). The legal prong of the Workman test is not implicated in a lesser degree analysis. State v. Fernandez-Medina, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000).

fact that we review for an abuse of discretion. Loos, 14 Wn. App. 2d at 760.

Only the first and third prongs are at issue here.[6]

### 1. Offense Proscribed

To determine whether criminal statutes " 'proscribe but one offense,' "

Washington courts look to whether the statutes criminalize the same or different

conduct. Tamalini, 134 Wn.2d at 732-33 (quoting State v. Foster, 91 Wn.2d 466,

472, 589 P.2d 789 (1979)). For example, in Tamalini, our Supreme Court

concluded that first and second degree manslaughter were not lesser degree

offenses of second degree felony murder because "the manslaughter statutes

and the felony murder statutes proscribe significantly different conduct and thus

define separate and distinct crimes." 134 Wn.2d at 732. The court examined the

statutory elements of manslaughter and felony murder and reasoned that,

although both statutes generally proscribe killing another human, they are

"directed to significantly differing conduct of defendants." Tamalini, 134 Wn.2d

at 733. Similarly, in State v. McJimpson, this court concluded that second

degree felony murder and second degree manslaughter were not the same

offense because "they prohibit significantly different conduct with regard to such

killing" and the statutes involve different mens rea requirements. 79 Wn. App.

164, 171-72, 901 P.2d 354 (1995).

---

[6] Johnson does not appear to contest the second element of the Fernandez-Medina test, that the information charges an offense divided into degrees.

Here, Johnson was charged under RCW 9A.36.021(1), which provides:

A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:

(a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm.

The jury instructions reflect this iteration of second degree assault.

Under RCW 9A.36.041(1), a person is guilty of fourth degree assault "if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another."

Fourth degree assault is a class C felony if the defendant, within the preceding decade, has been convicted of two or more of the following offenses, for which domestic violence against an intimate partner was proved:

    (i)  Repetitive domestic violence offense as defined in RCW 9.94A.030;

    (ii) Crime of harassment as defined by RCW 9A.46.060;

    (iii) Assault in the third degree;

    (iv) Assault in the second degree;

    (v) Assault in the first degree; or

    (vi) A municipal, tribal, federal, or out-of-state offense comparable to any offense under (b)(i) through (v) of this subsection.

RCW 9A.36.041(3)(b). Similarly, the jury instructions reflect this type of fourth degree felony assault.

Assault is undefined in our criminal code, and courts apply the common law definition. State v. Walden, 67 Wn. App. 891, 894, 841 P.2d 81 (1992). Here, the jury was instructed that an "assault" is "an intentional touching or striking of another person that is harmful or offensive regardless of whether any

7

physical injury is done to the person. A touching or striking is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive."

Comparing the conduct covered by each criminal statute, it is apparent that RCW 9A.36.021(1)(a) and RCW 9A.36.041(1) and (3) proscribe the same conduct. Both statutes proscribe acting with intent to achieve the same result: causing harmful contact to another. That the two crimes require the same mens rea is particularly relevant, since case law has often distinguished offenses because they require different mens rea. See Loos, 14 Wn. App. 2d at 762-73 (holding fourth degree intentional assault is not a lesser degree offense to third degree assault of a child when the latter was based on criminal negligence). We conclude that fourth degree felony assault is a lesser degree offense to second degree assault.

Still, Johnson attempts to distinguish the two offenses by arguing fourth degree felony assault is not the same offense because it "requires proof of an additional fact not required for second degree assault," that being proof of prior convictions. We disagree. Only in the context of lesser *included* offenses must the lesser offense contain all the elements of the greater offense. State v. Coryell, 197 Wn.2d 397, 411-12, 483 P.3d 98 (2021). Lesser degree offenses can have an element that is not an element of the greater offense. Coryell, 197 Wn.2d at 411.

2. Evidence of Lesser Offense

The third Fernandez-Medina prong is satisfied "only if based on some evidence admitted, the jury could reject the greater charge and return a guilty

8

verdict on the lesser." Coryell, 197 Wn.2d at 407. But it is not enough that the jury might simply disbelieve the State's evidence; some evidence presented must affirmatively establish the defendant's theory on the lesser degree offense. Fernandez-Medina, 141 Wn.2d at 456. When determining on appeal whether the evidence at trial was sufficient to support a lesser degree instruction, we "view[] the 'supporting evidence in the light most favorable to the party that requested the instruction.' " Coryell, 197 Wn.2d at 415 (quoting Fernandez-Medina, 141 Wn.2d at 455-56). Specifically, "a requested jury instruction on a lesser included or inferior degree offense should be administered 'if the evidence would permit a jury to rationally find a defendant guilty of the lesser offense and acquit him of the greater.' " Fernandez-Medina, 141 Wn.2d at 456 (quoting State v. Warden, 133 Wn.2d 559, 563, 947 P.2d 708 (1997)).

Here, the evidence could have supported that Johnson assaulted Trichler but did not cause her substantial bodily harm. At trial, Detective Maiya Atkins testified that during a police interview, Johnson told the detective that he called 911 because Trichler had "been falling all over the place." Detective Atkins also relayed that Johnson mentioned Trichler had "been using methamphetamine and thought that might have been an issue [that caused her to fall]" and that Trichler's "use of aspirin . . . might have been a reason why" Trichler had fallen. Dr. Eric Kinder also testified that he believed Trichler's symptoms might have been caused by her methamphetamine use, which could have raised her blood pressure enough to trigger "a very rare kind of aneurysmal hemorrhage." Dr. Amy Walker's testimony further supported this view; she noted that Trichler

9

reported the headache's onset as coming immediately after using methamphetamine. And an emergency medical services (EMS) responder, Galen Wallace, testified that he changed his impression of Trichler at the second EMS visit to substance use because Trichler admitted to "using methamphetamine and to drinking rum that day."

This evidence affirmatively supported an inference that Johnson assaulted Trichler. But the conflicting testimony about the origin of Trichler's symptoms left it for the jury to determine whether it was Johnson's assault or, instead, Trichler's drug use, drinking rum, and falling that caused her subsequent brain injury. Viewing the evidence in the light most favorable to the State, the party requesting the lesser degree instruction, the evidence could have allowed the jury to reject the greater charge and return a verdict only on the lesser.

We briefly note that Johnson misconstrues the "light most favorable" standard. He contends that viewing the evidence in the light most favorable to the State, the jury would conclude that Johnson assaulted Trichler and that this assault was the sole cause of Trichler's injuries. In support of this conclusion, Johnson points to Trichler's testimony that Johnson punched her, her testimony that she did not fall, and medical testimony that head trauma likely caused Trichler's injuries. But because fourth degree felony assault does not require Johnson to have caused Trichler substantial injury, the proper inquiry is whether the evidence could support an inference that something other than Johnson caused Trichler's injuries. In this case, it can. As already noted, there were

10

many possible causes of Trichler's injuries that the jury could have believed as being the proximate cause of her injuries.

Johnson also contends that the court erred by granting the State's request for the lesser degree offense before hearing any evidence. This is inaccurate. During motions in limine, the State requested that the jury be instructed on fourth degree felony assault as a lesser degree offense of second degree assault. The parties then discussed what evidence they intended to proffer and whether that evidence could support the lesser degree offense. Johnson argued that the prior conviction evidence necessary to support the lesser degree offense violated ER 404(b) and that the court should first consider pretrial testimony from Trichler before making a ruling. The court then overruled the State's motion, finding that probative value of the prior offense evidence did not outweigh its prejudicial effect. The court noted that it was open to reconsidering its ruling.

The next day, the court heard pretrial testimony from Trichler. The court then acknowledged that it had erred in overruling the State's request for a lesser degree instruction because it had misunderstood the applicable law and asked both parties to reargue their positions. After the parties presented their positions, the court concluded that based on the facts presented, there was sufficient evidence for the lesser degree instruction and granted the State's request.

Later on, at the close of evidence, Johnson again objected to fourth degree felony assault as a lesser degree offense. The court overruled the objection and allowed the instruction.

Contrary to Johnson's contention, the court heard evidence before initially ruling on the jury instruction. The State also described the evidence it intended to offer to support the lesser degree instruction before the court made its ruling. The court then reconsidered its ruling at the close of trial and reaffirmed that the instruction was proper. The court properly determined on both occasions that an instruction on fourth degree felony assault was warranted. Such an instruction was not error.

3. Substantial Prejudice

Johnson maintains that the court's instruction on fourth degree felony assault resulted in substantial prejudice because (1) the jury was instructed on an uncharged offense and (2) this instruction permitted admittance of prejudicial evidence. We disagree.

Generally, a defendant is entitled to notice of the charges they will face at trial and may be convicted of only charges contained in the information. Tamalini, 134 Wn.2d at 731. But RCW 10.61.003 provides sufficient notice to defendants that they may be convicted of any lesser offense to the charged crime. Foster, 91 Wn.2d at 472. Thus, there is no prejudice and a jury may properly find a defendant guilty of any lesser degree crime of the crimes included in the original information. Peterson, 133 Wn.2d at 893.

In this case, the jury was instructed on a lesser degree offense to second degree assault, so the fact that the lesser offense was not charged is a nonissue. Johnson's argument that evidence related to the lesser degree offense was wrongly admitted is also unconvincing. That evidence—namely, that there were

12

two prior assaults—was subject to a limiting instruction: the jury was not permitted to consider evidence of Johnson's prior convictions if it found him guilty of second degree assault. The jury found him guilty of second degree assault, and we presume the jury followed instructions and did not consider the prior convictions as evidence. State v. Mohamed, 186 Wn.2d 235, 244, 375 P.3d 1068 (2016) ("We presume that a jury will follow the instructions provided to it.").

ER 404(b)

Johnson asserts that evidence of prior assaults between him and Trichler was not relevant to Trichler's credibility and that the court erred by admitting it. Because this evidence helped explain Trichler's inconsistent statements and her conduct following the assault at issue here, we disagree.

We review the trial court's determination to admit or exclude evidence for an abuse of discretion. State v. Foxhoven, 161 Wn.2d 168, 174, 163 P.3d 786 (2007). A trial court abuses its discretion if its decision is manifestly unreasonable, or is exercised on untenable grounds or for untenable reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). The appellant bears the burden of proving the court abused its discretion. State v. Wade, 138 Wn.2d 460, 464, 979 P.2d 850 (1999).

ER 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." But this evidence may be used for another purpose, such as proof of motive, plan, or identity. Foxhoven, 161 Wn.2d at 175. Evidence that a defendant previously assaulted a victim is generally inadmissible if the

13

defendant assaults the same victim on a later occasion. State v. Harris, 20 Wn. App. 2d 153, 157, 498 P.3d 1002 (2021), review denied, 199 Wn.2d 1016, 510 P.3d 1001 (2022). However, such evidence may be admissible to "assist the jury in judging the credibility of a recanting victim." State v. Magers, 164 Wn.2d 174, 1886, 189 P.3d 126 (2008) (plurality opinion). And the victim's credibility need not be an element of the charged offense. See, e.g., Harris, 20 Wn. App. 2d at 158 (evidence of prior assaults admissible to help jury determine recanting witness's credibility in case involving violation of a no-contact order charge). To determine if ER 404(b) evidence is admissible, Washington courts use a four-part test:

> "(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect."

State v. Gresham, 173 Wn.2d 405, 421, 269 P.3d 207 (2012) (quoting State v. Vy Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)). "The party seeking to introduce the evidence has the burden of establishing the first, second, and third elements." State v. Ashley, 186 Wn.2d 32, 39, 375 P.3d 673 (2016). "This analysis must be conducted on the record." Foxhoven, 161 Wn.2d at 175. If the evidence is admitted, the court must give a limiting instruction to the jury. Ashley, 186 Wn.2d at 39. A court's decision to admit evidence of prior bad acts depends heavily on the facts of the case and the purpose for which the evidence is sought to be introduced. Ashley, 186 Wn.2d at 44.

14

In this case, the trial court conducted the appropriate four-step analysis on the record and gave a limiting instruction to the jury. However, neither party cites or addresses this four-part test on appeal. The State relies on an older, two-part test that concerns only relevance and prejudice, and Johnson argues generally that any evidence of past incidents of domestic violence is categorically impermissible, irrelevant, and unduly prejudicial. Johnson's argument largely tracks the second, third, and fourth prongs of the four-part test. Because neither party challenges or addresses the first prong, we address only the other three.

1. Second Prong: Purpose for Introducing Evidence

The State sought to introduce evidence of past domestic violence incidents and how Trichler responded to those incidents to help the jury assess Trichler's credibility. This clearly satisfies the second prong of the ER 404(b) inquiry, which only requires a party to identify a purpose for offering the evidence. See, e.g., Magers, 164 Wn.2d at 185-86 (prior acts of domestic violence admissible to support a witness's credibility after their testimony changed).

2. Third Prong: Relevance

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." ER 401. Evidence of prior incidents of domestic violence is probative of a witness's credibility in cases where a witness gives conflicting statements about the defendant's conduct. State v. Gunderson, 181 Wn.2d 916, 923-25, 337 P.3d 1090 (2014); cf. Ashley,

15

186 Wn.2d at 47 (trial court improperly admitted prior assault evidence where victim's trial testimony was consistent with prior statements to police).

Here, the trial court found that, "with regard to [Trichler's] credibility and her allegation in this case," evidence of prior domestic abuse was "relevant as to how she behaves in this relationship." The State contends that evidence of prior assaults and Trichler's response to those assaults were relevant to explain her inconsistent statements and conduct. We agree.

Johnson contends that the prior assaults are not relevant because they show only that "sometimes [Trichler] reports alleged assaults and sometimes she does not." But Trichler's inconsistent reporting is exactly what is relevant. As is reflected in this case, victims of domestic violence often minimize, deny, or lie about abuse in an effort to protect themselves and avoid repeated violence from their batterer. Anne L. Ganley, Domestic Violence: The What, Why, and Who, as Relevant to Criminal and Civil Court Domestic Violence Cases, in DOMESTIC VIOLENCE MANUAL FOR JUDGES ch. 2, at 41 (2016), https://www.courts.wa.gov/content/manuals/domViol/chapter2.pdf [https://perma.cc/UA2L-STVU]. This is particularly true when domestic violence issues go public, such as in court proceedings, and batterers try to increase their coercive control over the abused party. Ganley, supra, ch. 2 at 41. And sometimes, the abused party's minimization or denial is actually a survival mechanism: when asked by others if they were injured, they may honestly answer no because they have been so successful in blocking out the event. Ganley, supra, ch. 2, at 42. This is not to say that victims of domestic violence are less credible. We merely acknowledge

the tremendous emotional toll that a relationship plagued by domestic violence may have on a person.

These dynamics are present in this case. The State offered evidence of two prior assaults to demonstrate that Trichler had a pattern of inconsistently reporting past abuse and later recanting. After the first prior assault, Trichler decided not to report it to authorities, despite Johnson having strangled her until she was "out cold." And after the second prior assault, Trichler reported the incident to police but "ran off" before they arrived. She later wrote a letter to the trial court recanting her earlier report of assault.

Trichler's conduct in this case mirrors her past conduct. After the present assault, Trichler denied repeatedly to emergency medical personnel and hospital staff that she had been assaulted or suffered any trauma. But at trial, Trichler testified repeatedly that Johnson had hit her. Trichler also waited several days to report the assault, and testified that she did not initiate the reporting—her mother called the police for her. Moreover, once Trichler was discharged from the hospital, she continued to communicate with Johnson and even went to his apartment. Trichler's inconsistent statements before and at trial, along with her actions after the assault, undercut her credibility at trial. Contrary to Johnson's assertion that evidence of past abuse "does nothing" to assist the jury, this evidence allows the jury to evaluate Trichler's credibility in the context of a relationship marked by domestic violence.

Johnson also argues that our Supreme Court announced a domestic violence exception to ER 404(b) in Magers that was later rejected in Gunderson.

17

We disagree. Magers did not announce a "domestic violence exception" and Gunderson did not reject the Magers plurality holding. Rather, Gunderson clarified the Magers plurality holding. The Gunderson court explained:

> In State v. Magers, we took great care to specifically establish that "evidence that [the defendant] had been arrested for domestic violence and fighting and that a no-contact order had been entered following his arrest was relevant to enable the jury to assess the credibility of [the complaining witness] *who gave conflicting statements about* [*the defendant's*] *conduct.*"

181 Wn.2d at 923-24 (alterations in original) (quoting Magers, 164 Wn.2d at 186). The court noted that unlike in Magers, the victim in Gunderson did not give any conflicting statements—there was only evidence from other sources that contradicted the victim's account. 181 Wn.2d at 924. The court then explained the effect of Gunderson on Magers: "Accordingly, we decline to extend Magers to cases where there is no evidence of injuries to the alleged victim and the witness neither recants nor contradicts prior statements." Gunderson, 181 Wn.2d at 925. And in a footnote, the court clarified that it was not announcing a domestic violence exception and rejected Johnson's assertion that Magers stood for such a proposition: "The blanket extension of Magers proposed by the dissent would create a domestic violence exception for prior bad acts that is untethered to the rules of evidence." Gunderson, 181 Wn.2d at 925 n.3. In another footnote, the court clarified that its opinion "should not be read as confining the requisite overriding probative value exclusively to instances involving a recantation or an inconsistent account by a witness." Gunderson, 181 Wn.2d at 925 n.4.

18

Here, there was evidence of injuries to Trichler and Trichler also contradicted her previous statements at trial. The rule set forth in Magers and Gunderson applies here; evidence of prior assaults was properly admitted for the jury to judge Trichler's credibility in light of her inconsistent statements about the assault.

### 3. Fourth Prong: Probative Value versus Prejudicial Effect

Finally, Johnson argues that the probative value of the prior assault testimony is outweighed by its prejudicial effects. He also contends the jury relied on Trichler's testimony as propensity evidence.

This prong implicates ER 403. Ashley, 186 Wn.2d at 43. In domestic violence cases, "courts must be careful and methodical in weighing the probative value against the prejudicial effect of prior acts . . . because the risk of unfair prejudice is very high." Gunderson, 181 Wn.2d at 925. "To guard against this heightened prejudicial effect, we confine the admissibility of prior acts of domestic violence to cases where the State has established their overriding probative value, such as to explain a witness's otherwise inexplicable recantation or conflicting account of events." Gunderson, 181 Wn.2d at 925.

Here, the State succeeded in showing the overriding probative value of the evidence for credibility purposes because Trichler gave inconsistent statements about the abuse. She denied any abuse to various medical personnel but then later testified at trial that Johnson had assaulted her. Therefore, the court did not err in admitting the domestic violence evidence for credibility purposes. Cf. Gunderson, 181 Wn.2d at 925 (court erred in admitting

past domestic violence evidence where victim's testimony before and at trial was consistent); Ashley, 186 Wn.2d at 47 (court erred in admitting domestic violence evidence where trial testimony was consistent with prior statements to police).

Johnson's contention that the jury improperly relied on the evidence as propensity evidence is similarly unavailing. Johnson overlooks a limiting instruction that prohibited the jury from considering Trichler's testimony for anything other than determining her credibility. Again, we presume juries follow instructions. Mohamed, 186 Wn.2d at 244.

Exceptional Sentence

Johnson contends that the court relied on an invalid factor in imposing an exceptional sentence and that it is unclear whether the court would have imposed the same sentence based on the remaining valid factors, requiring reversal. The State concedes that the court relied on an invalid factor, but asserts that the record makes clear that the court considered two other factors as independent bases for an exceptional sentence. We conclude the sentence is valid because, based on the court's written findings, at least one other valid factor provided an independent basis for the exceptional sentence.

A trial court may impose an exceptional sentence outside the standard range if it concludes that "there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. Whenever the court imposes an exceptional sentence, it must set forth the reasons for its decision in written findings of fact and conclusions of law. RCW 9.94A.535. However, " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime

20

beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " Blakely v. Washington, 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (quoting Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)). The statutory maximum is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303 (emphasis omitted). Thus, any exceptional sentence that exceeds the statutory maximum is subject to the two Blakely requirements.

On appeal, an exceptional sentence may be upheld "even where all but one of the trial court's reasons for the sentence have been overturned." State v. Gaines, 122 Wn.2d 502, 512, 859 P.2d 36 (1993). Remand is necessary "where it is not clear whether the trial court would have imposed an exceptional sentence on the basis of only the one factor upheld." Gaines, 122 Wn.2d at 512; see also State v. Parker, 132 Wn.2d 182, 189, 937 P.2d 575 (1997).

Here, the court imposed an exceptional sentence based on three factors: (1) that Johnson reoffended shortly after being released from incarceration (the "rapid recidivism" aggravator); (2) that Johnson's prior unscored criminal history resulted in a sentence that was clearly too lenient; and (3) that Johnson had committed multiple current offenses and his high offender score resulted in some of the current offenses going unpunished.[7] RCW 9.94A.535(3)(t), (2)(b), (c). Of

---

[7] Though the State argues that the court did not conclude the sentence was "too lenient," the court's written conclusions of law say otherwise: "This court has discretion under RCW 9.94A.535(2)(b) & (c) to impose a sentence outside the standard range where the prior unscored criminal history results in a sentence that is clearly *too lenient*." (Emphasis added.)

the three factors, the first and the second require either a jury finding or a stipulation from the defendant.  See RCW 9.94A.535(3)(t) (rapid recidivism factor must be considered by jury); State v. Saltz, 137 Wn. App. 576, 583-84, 154 P.3d 282 (2007) (RCW 9.94A.535(2)(b) subject to Blakely requirements); cf. State v. Newlun, 142 Wn. App. 730, 742-43, 176 P.3d 529 (2008) (RCW 9.94A.535(2)(c) does not require courts to look beyond facts reflected in jury verdict or admitted by defendant).

Johnson asserts, and the State concedes, that the second factor—whether unscored crimes rendered the sentence "too lenient"—is invalid because the jury did not consider it and Johnson did not stipulate to facts supporting it.[8] Thus, the crux of the matter is whether, absent the invalid factor, the court clearly intended to impose an exceptional sentence.  The record indicates that it would have.  The court's conclusions of law for an exceptional sentence list the first factor separately from the other two:

> 1. The court has discretion under RCW 9.94A.535 to impose a sentence outside the standard range because the aggravating circumstance under *RCW 9.94A.535(3)(t)* has been pled and proved.

---

[8] Johnson also contends that the court did not make a finding that the presumptive sentence would be too lenient.  Rather, he claims the court impermissibly invented a new aggravating factor based on the following finding:

> There are three prior unscored misdemeanor domestic violence court order violation convictions from 2011.  These convictions are similar in character to the conduct alleged in count two, but do not alter the standard range for either count.

Though the court did not use the words "too lenient" in this finding, it did use those words in its corresponding conclusion of law.  And contrary to Johnson's assertion, it appears the court was describing the "too lenient" factor, not creating a new factor.

2. The court has discretion under *RCW 9.94A.535(2)(b)&(c)* to impose a sentence outside the standard range where the prior unscored criminal history results in a sentence that is *clearly too lenient* and where the defendant has committed multiple current offenses and the high offender score results in *some offenses going unpunished.*

(Emphasis added.) The second conclusion of law does, admittedly, blur the lines between the second and third factors. But even absent these factors, the court's first conclusion of law, determining that RCW 9.94A.535(3)(t) provides an independent basis to impose an exceptional sentence, and its division into a separate conclusion supports that the trial court would have relied on it alone.

The court's oral ruling at sentencing also supports this outcome. The court delineated factors one and three as bases for an exceptional sentence:

The State has requested for an exceptional upward [sentence] based on, *A*, rapid recidivism, and *B*, the three crimes argument that the offender score is so high that the maximum doesn't go up that high, and that he would be allowed basically to get away with a crime without some sort of punishment. Having taken all of this into consideration, I do find that there is grounds for an exceptional upward sentence.

(Emphasis added.) We affirm the imposition of an exceptional sentence.[9]

<u>Constitutionality of Exceptional Sentences</u>

Johnson argues that the imposition of *any* exceptional sentence under the SRA (Sentencing Reform Act of 1981, ch. 9.94A RCW) violates the Sixth and Fourteenth Amendments to the United States Constitution because it requires the court to make a factual determination that facts found by the jury are

---

[9] Johnson also contends that the State failed to provide him notice of the "too lenient" aggravating factor. But as the court's oral ruling makes clear, the State did not ask for this aggravating factor to be imposed—the court did it sua sponte.

23

substantial and compelling reasons justifying an exceptional sentence. We disagree. This court previously addressed this same issue in State v. Sage, 1 Wn. App. 2d 685, 407 P.3d 359 (2017), and determined that this secondary inquiry is a legal one, not a factual one.

The Sixth Amendment provides criminal defendants with a right to a jury trial. This right, in conjunction with the due process clause of the Fourteenth Amendment, requires that each element of a crime be proved to a jury beyond a reasonable doubt. Alleyne v. United States, 570 U.S. 99, 104, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013) (plurality opinion). As previously noted, "any fact that 'expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict' is an 'element' that must be submitted to the jury." Hurst v. Florida, 577 U.S. 92, 97, 136 S. Ct. 616, 193 L. Ed. 2d 504 (2016) (alteration in original) (quoting Apprendi, 530 U.S. at 494).

The imposition of an exceptional sentence under the SRA is a two-step process prescribed by statute. First, the jury must find "unanimously and beyond a reasonable doubt, one or more of the facts alleged by the state in support of an aggravated sentence" exist. RCW 9.94A.537(6). Then, the court may impose an exceptional sentence "if it *finds*, considering the purposes of this chapter, that the facts found [by the jury] are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.537(6) (emphasis added).

This court previously addressed the constitutionality of the SRA's exceptional sentencing scheme in the context of the Sixth and Fourteenth

24

Amendments and concluded that it met due process requirements.  Sage, 1 Wn. App. 2d at 710.

Like Johnson, the defendant in Sage argued that the trial court engaged in prohibited fact-finding, in violation of his Sixth Amendment right to a jury trial, by concluding an exceptional sentence was warranted.  This court disagreed, concluding that, despite the statute's imprecise word choice,

> [t]he only permissible "finding of fact" by a sentencing judge on an exceptional sentence is to confirm that the jury has entered by special verdict its finding that an aggravating circumstance has been prove[d] beyond a reasonable doubt.  Then it is up to the judge to make *the legal, not factual, determination* whether those aggravating circumstances are sufficiently substantial and compelling to warrant an exceptional sentence.

1 Wn. App. 2d at 709 (emphasis added) (footnote omitted).

Johnson's argument that the SRA is akin to the Florida sentencing scheme deemed unconstitutional by the Supreme Court in Hurst is also rejected in Sage:

> But the Florida statute at issue expressly state[d] that the jury findings were "advisory."  [Former] FLA. STAT. § 921.141 (2010).  By contrast, under Washington procedure here, the jury exclusively resolves the factual question whether the aggravating circumstances have been prove[d] beyond a reasonable doubt.

1 Wn. App. 2d at 710 n.86.

We reject Johnson's constitutional argument and conclude that the court did not engage in impermissible fact finding by determining the jury's findings supported an exceptional sentence.

## No-Contact Order Sentence

Johnson argues the court erred by sentencing him to more time than statutorily permitted on the no-contact order violation. The State concedes that the court erred. We agree that the court erred and remand for the court to correct the sentence.

RCW 9.94A.505(5) provides that, except in limited circumstances, the court may not impose a sentence that exceeds the statutory maximum for a given crime. Here, the statutory maximum on Johnson's no-contact order violation was 60 months. RCW 7.105.450(5) (no-contact order violation is a class C felony); RCW 9A.20.021(1)(c) (statutory maximum for class C felony is 5 years). Despite this, the court sentenced Johnson to 60 months of confinement and 12 months of community custody. This sentence clearly exceeds the statutory maximum and remand is warranted.

We affirm Johnson's convictions but remand for the court to resentence Johnson on the no-contact order violation conviction.

Smith, C.J.

WE CONCUR:

Birk, J.                    Chung, J.